Simon ANGUIANO and Elva
Anguiano, Appellants,

v.

JIM WALTER HOMES, INC., Appellee.

No. 15922.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 18, 1978.
Rehearing Denied Feb. 15, 1978.

Barry Snell, San Antonio, Hector Gonzalez, Sinton, for appellants.

Morris Atlas, Gary R. Gurwitz, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, M. K. Woodward, Austin, for appellee.

MURRAY, Justice.

This is an appeal from a summary judgment in an action for statutory penalties under the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–6.01 et seq. (1971). This suit was brought by appellants, Simon Anguiano and wife, Elva Anguiano, against appellee, Jim Walter Homes, Inc. in which both sides moved for summary judgment. The trial court granted the summary judgment of appellee and overruled the summary judgment of appellants and appeal has been perfected to this Court.

On March 8, 1976, the appellants entered into a contract with appellee which provided that the appellee would build a new house on the appellants' unencumbered and unimproved property in Alice, Texas for the cash price of $13,910.00 plus a finance charge of $15,124.00 for a total of $29,034.00. The total amount was to be repaid in 180 monthly installments of $161.30 each and the contract disclosed that the annual percentage rate was 11.4 percent. To secure the payment of this debt, the appellee was given a first lien on the appellants' property. This financial arrangement is a "time price differential" and is not an "interest" transaction, and if the contract is a contract for the sale of goods or services, then it is governed by Chapter 6. If the negotiations between a buyer and a seller involve a bona fide quotation of

both a cash price and a credit price, the transaction does not involve usury, even though the quoted credit price is such as to exceed the cash price plus lawful interest thereon. *Lamb v. Ed Maher, Inc.*, 368 S.W.2d 255 (Tex.Civ.App.—Dallas 1963, no writ); *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd). If the transaction is actually a device to evade the usury law, it is not saved by any attempted difference between a claimed "cash" price and a claimed "credit" price. *Bradford v. Mack*, 359 S.W.2d 936 (Tex.Civ.App.—El Paso (1962, writ ref'd n. r. e.); 91 C.J.S. Usury § 18 (1955). In 1967, the Legislature enacted the Credit Code which preserved the time-price doctrine but which imposed various disclosure requirements and limitations when time-price differential was charged. Art. 5069–6.01 et seq. On the other hand, Chapter 1 of the Credit Code allows interest up to 10 percent per annum, and imposes no disclosure requirements nor prohibitions. Art. 5069–6.-01 et seq. By the Credit Code, sellers are permitted to choose between interest up to 10 percent per annum, free of restrictions (Chapter 1); or to charge time-price differential at a much higher yield and be subject to closer regulations (Chapter 6).

By appellants' first point and appellee's first counterpoint the question is presented whether or not a contract to build a new home is governed by Chapter 6 of the Texas Credit Code.

Art. 5069–6.08 provides in part:

This Chapter shall apply exclusively to retail installment transactions as defined in Article 6.01 hereof.

Art. 5069–6.01(e) provides:

"Retail installment transaction" means any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or a retail charge agreement, as defined in this Article, which provides for a time price differential, as defined in this Article, and under which the buyer agrees to pay the unpaid balance in one or more installments, together with a time price differential.

Art. 5069–6.01(a) provides:

"Goods" means all tangible personal property when purchased primarily for personal, family or household use and not for commercial or business use, including such property which is furnished or used at the time of sale or subsequently, in the modernization, rehabilitation, repair, alteration, improvement or construction of real property so as to become a part thereof whether or not severable therefrom.

Art. 5069–6.01(b) provides:

"Services" means work, labor, or services of any kind when purchased primarily for personal, family or household use and not for commercial or business use

. . . .

The Mechanic's Lien Contract which was signed in conjunction with this transaction provides in part:

Builder agrees to build, construct, and complete above mentioned improvements within 180 days from this date in a good, substantial, workmanlike manner, and to furnish and provide all labor and material used in the construction and erection thereof.

Clearly, if a contract is one to furnish goods in the construction of a new home, it is within Chapter 6 of the Credit Code. Likewise, if a contract is to furnish services to construct a new home, it is within Chapter 6 of the Credit Code. We hold that a contract to provide both goods and services in the construction of a new home is within Chapter 6 of the Credit Code. Such a contract fits squarely within the definition of "retail installment transactions." Art. 5069–6.01(e). Appellee contends that the statute before us should be restricted in its application to work done on a pre-existing structure and not to the initial erection of the structure itself because of the rule of ejusdem generis. This rule is sometimes employed in the construction of ambiguous statutes and means that when a list of specific words is followed by some general terms the general terms are not to be construed in their broadest sense but are

held to apply to things of the same kind of class as specifically mentioned. Black's Law Dictionary 608 (4th Ed. 1968). Art. 5069–6.01(a) defines "goods" as tangible personal property, including such property which is furnished in the "modernization, rehabilitation, repair, alteration, improvement or construction of real property so as to become a part thereof whether or not severable therefrom." The appellant resists the application of the rule of ejusdem generis because the words "improvement" and "construction" are no more general than the other enumerated words, i. e., "modernization," "rehabilitation," "repair," "alteration." Whatsoever may be the merits of this legal sparring we need not determine because the statute, as we read it, is plain, clear, and unambiguous, and hence, the aid of rules of construction is not helpful or required, and in fact, their use under such circumstances would be improper. *Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974); *Second Injury Fund v. Keaton*, 162 Tex. 250, 345 S.W.2d 711 (1961); *State Board of Insurance v. Betts*, 158 Tex. 612, 315 S.W.2d 279 (1958). By this statute it is our opinion that the Legislature intended that Chapter 6 should apply to the initial erection of structures as well as preexisting structures. The language of the statute, framed entirely in the disjunctive, seems to admit of no other construction.

█ Appellee, in his reply no. 3, alleges that if Chapter 6 of Art. 5069 is applicable to the transaction involved in this suit, it is unconstitutional because the title to the Act does not comply with § 35, Art. III of the Texas Constitution. § 35 of Art. III provides:

> No bill, . . . shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed.

The purpose of § 35 is to require that the bill give notice to both the Legislature and the general public of statutes they might wish to oppose and to prevent surprise and fraud. *Beck v. Winegeart*, 471 S.W.2d 422 (Tex.Civ.App.—Amarillo 1971, no writ); *Yeary v. Bond*, 384 S.W.2d 376 (Tex.Civ. App.—Amarillo 1964, writ ref'd n. r. e.) Appellee contends that the caption of Art. 5069 failed to give notice that the statute applied to the business in which the appellee is engaged. The caption of Art. 5069, H.B.No. 452, 60th Texas Legislature (1967) reads as follows:

> An act rearranging, reorganizing, revising, and amending provisions of Title 79 'Interest' of the Revised Civil Statutes of Texas, 1925, and certain other laws relating to loans and lenders, and providing for additional legislation relating to loans and lenders in accordance with the provisions of Section II of Article XVI of the Constitution of Texas, which authorizes the Legislature to classify loans and lenders, license and regulates lenders, define interest and fix maximum rates of interest, and further defining and limiting the charges imposed by retail vendors of goods and services in credit sales, and providing for additional legislation to protect the public from deceptive and abusive trade practices in both cash and credit consumer transactions, so as to create a revised Title 79 to be known as Title 79, 'Interest-Consumer Credit-Consumer Protection,' . . . .

There is no merit in appellee's contention of unconstitutionality. As previously stated, a contract to provide both goods and services in the construction of a new home is within Chapter 6 of the Credit Code. The caption is clear in providing limitations to "charges imposed by retail vendors of goods and services in credit sales" and to the protection to the public from "deception and abusive trade practices" in "credit consumer transactions." Art. III, § 35 requires only that the title state the general subject and it need not explain the details. *Robinson v. Hill*, 507 S.W.2d 521 (Tex.1974). The caption of the act is not defective and does not violate Art. III of § 35.

█ Appellant contends that if Chapter 6 of the Texas Consumer Credit

Code imposes requirements and prohibitions with regard to the building of new homes pursuant to contracts which provide for a time price differential, while failing to impose the same requirements and prohibitions with regard to the building of new homes pursuant to contracts which charge interest, then Chapter 6 is unconstitutional.

Art. I, § 3 of the Texas Constitution, the equal protection clause provides:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

A state may classify its citizens into reasonable classes without violating the equal protection clause of the Fourteenth Amendment. *Bjorgo v. Bjorgo*, 402 S.W.2d 143 (Tex.1966). In passing upon constitutionality of a classification, the test to be applied by courts is whether the classification made by the legislature is essentially arbitrary, unreasonable, and not based upon reality. *American Transfer & Storage Co. v. Bullock*, 525 S.W.2d 918 (Tex.Civ.App.—Austin 1975, writ ref'd). The classification is reasonable and allows all builders to decide whether they will charge interest up to 10 percent per annum and be relatively free of restrictions, or charge time-price differential as high as 21.5 percent per annum and be subject to the requirements and prohibi-

tions of Chapter 6. We hold that the classification has a reasonable relationship to the purpose of the statute in question and operates equally on all those who charge time-price differential and is therefore constitutional.

Appellee next contends that penalty provisions of Art. 5069–8.01 (twice the finance and default charges and reasonable attorney's fees fixed by the Court) constitute "excessive fines" in violation of Texas Constitution Art. 1, § 13. The Legislature has found a need for firm and effective penalties for usury and other prohibited practices in credit transactions. The penalty provision is not designed to compensate the consumer for actual damages but instead is to deter violators and to encourage enforcement of the Code by private litigants, rather than placing the entire enforcement burden on the Consumer Credit Commissioner. In this manner, the expense of enforcement is placed on those who violate the law rather than on the taxpaying public. The penalty provision of the Texas Consumer Credit Code might well be considered high. The problems which the Legislature attempts to regulate by the enactment of the Texas Consumer Credit Code are also great. By the declaration of legislative intent our Legislature has found a great need for the Texas Consumer Credit Code.[1] In prescribing fines, penal-

1. (1) Many citizens of our State are being victimized and abused in various types of credit and cash transactions. These practices impose a great hardship upon the people of our State.

(2) Credit in its various forms is one of the most essential and vital elements of our economy. It can be truly said that credit affects every citizen every day. Credit transactions in our State amount to many billions of dollars per year.

(3) Credit abuses now existing in our State stem from the fact that many types of credit transactions are not now subject to effective public regulation and control and the penalties imposed for usury do not provide effective or workable safeguards in this vital area of economic activity.

(4) Such abuses are especially prevalent in the area of consumer transactions both cash and credit. Unscrupulous operators, lenders and vendors, many of whom are transient to our State, are presently engaged in many abu-

sive and deceptive practices in the conduct of their businesses. These unregulated practices bring great social and economic hardship to many citizens of our State. They impose intolerable burdens on those segments of our society which can least afford to bear them—the uneducated, the unsophisticated, the poor, and the elderly.

(5) These facts conclusively indicate a need for a comprehensive code of legislation to clearly define interest and usury, to classify and regulate loans and lendors, to regulate credit sales and services, and place limitations on charges imposed in connection with such sales and service, to provide for consumer education and debt counseling, to prohibit deceptive trade practices in all types of consumer transactions, and to provide firm and effective penalties for usury and other prohibited practices. Tex.Rev.Civ.Stat.Ann., Art. 5069, Declaration of Legislative Intent (1971).

ties, and other punishment, the Legislature has wide discretion. *State v. Laredo Ice Co.*, 96 Tex. 461, 73 S.W. 951 (1903). In *State v. Laredo Ice Co.*, our Supreme Court has stated:

Prescribing fines and other punishments which may be imposed upon violators of the law is a matter peculiarly within the power and discretion of the Legislature, and courts have no right to control or restrain that discretion, except in extraordinary cases, where it becomes so manifestly violative of the constitutional inhibition as to shock the sense of mankind.

Considering the abuses attempted to be regulated by the Texas Consumer Credit Code, we are not able to say that the penalty imposed is so excessive as to "shock the sense of mankind." We conclude that Chapter 8 of the Texas Consumer Credit Code is not unconstitutional.

Among the numerous violations alleged by the appellants in this case the following are established by the summary judgment record as a matter of law: (1) The contract provides for a first lien on the real estate, in violation of Art. 5069–6.05; (2) the contract was not designated "retail installment contract," in violation of Art. 5069–6.02.

Art. 5069–6.05 provides in part:

No retail installment contract or retail charge agreement shall:

 * * * * * *

(7) Provide for or grant a first lien upon real estate to secure such obligation, except such lien as is created by law upon the recording of an abstract of judgment.

Art. 5069–6.02 provides in part:

The contract shall be designated 'Retail Installment Contract'

■ Appellee takes the position that prohibition against first liens in retail installment transactions violates Texas Constitution, Art. XVI, §§ 37 and 50, pertaining to mechanics and materialmens liens and liens on homesteads. We disagree. The Code does not attempt to deny materialmen their lien, it simply prohibits them from taking such lien as a first lien in a retail

installment transaction. The affect of the statute is to limit first lien transactions to 10 percent interest or less. By this scheme creditors are permitted to chose between higher rates and less security or lower rates and greater security.

■ Appellee relies on the doctrine of de minimus non curat lex for the failure of the contract to be designated as "retail installment contract," as required by the Code. This doctrine stands for the proposition that the law does not care for or take notice of very small or trifling matters. It has been invoked to excuse minor deviations from the letter of the law. *Thornhill v. Sharpstown Dodge Sales, Inc.*, 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ). In *Thornhill* the purchaser of an automobile signed a note for $6,695.64 to be paid in 42 monthly installments of $159.42 each, and thus contended that he was charged 42 cents too much interest on the principal balance with the credit extending over a 42 month period. This amounted to an excessive charge of one penny per month. The Beaumont court held, and we agree, that such a slight excess should be disregarded. It is the duty of the Legislature to decide what should be contained in a retail installment contract and for the courts to decide that such a plain requirement as contained in the Code is very small or a trifling matter would be to encroach into the exclusive domain of the Legislature, and this is not the proper function of the court. *Ex parte Salter*, 452 S.W.2d 711, 713 (Tex.Civ.App.—Houston 1970, writ ref'd).

For the violation of the Texas Consumer Credit Code, appellants are entitled to recover under art. 5069–8.01, ". . . twice the amount of interest or time-price differential . . .." provided for under the contract.

■ Since the interest charged or price differential provided for the contract (the "finance charge") is $15,124.00, appellant is entitled to judgment in the sum of $30,-248.00 for the violation by appellee of the Texas Consumer Credit Code.

The portion of the trial court judgment granting appellee motion for summary judgment and denying appellants' motion for summary judgment is reversed, and judgment is here rendered that appellants recover from appellee the sum of $30,248.00.

The portion of the judgment below denying appellants' claim for attorney's fees is reversed, and the portion of the plaintiff's claim relating to attorney's fees is severed from the remainder of this case and is remanded to the trial court for the purpose of determining the amount which would constitute reasonable attorney's fees under the facts and circumstances of this case.