SAN JUAN POOLS, INC., Appellant,

v.

Roderick KROHN and wife Barbara Krohn, Appellee.

No. 16197.

Court of Civil Appeals of Texas, San Antonio.

Nov. 28, 1979.

Gardner, Ferguson & Sommers, San Antonio, for appellant.

Dennis K. Drake, West & West, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a case involving alleged violations of the Consumer Credit Code. Appellant San Juan Pools, Inc., appeals from a portion of an order granting partial summary judgment for appellees, Roderick Krohn and wife, Barbara Krohn, and denying summary judgment for appellant.

On February 19, 1978, the Krohns entered into a written agreement with San Juan Pools to buy a fiberglass swimming pool plus equipment, to be installed in the backyard of their residence in San Antonio, for $8,975. San Juan agreed to finance the transaction, since in the ordinary course of its business it had regularly extended credit to other purchasers of San Juan pools. The Krohns executed a standard Bar form "Builder's & Mechanic's Lien (with Power of Sale) Note," payable in 86 monthly installments of $100 per month, plus an 87th payment of $37.11. Because the Krohns had already paid San Juan $3,000 at the time the note was signed, the instrument recited that the amount of the note was $5,975, and that the interest rate charged was 10.86%. The Krohns also executed a standard Bar form "Builder's & Mechanic's Lien Contract" in which they granted San Juan a security interest in their homestead.

Thereafter, the Krohns made three $100 monthly payments pursuant to the note. On June 21, 1978, they filed an original petition seeking statutory penalties and rescission of the transaction for violations of the Truth in Lending Act, §§ 102–130, 15 U.S.C. §§ 1601–1640 (1974), Regulation Z, 12 C.F.R. §§ 226.1–240 (1979), and statutory penalties for violation of the Texas usury law. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon 1971). On July 21, 1978, San Juan admitted each and every factual allegation contained in the Krohns' Original Petition. San Juan filed a counterclaim in which it sought equitable relief against the Krohns. All of San Juan's bases of recovery were denied, and San Juan does not appeal therefrom.

On September 8, 1978, a hearing was held on the Krohns' Amended Motion for Partial Summary Judgment, at which time San Juan re-urged its own Motion for Summary Judgment. At that time the trial court, in substance, found:

(a) San Juan had violated the Federal Consumer Protection Act and assessed a statutory penalty of $1,000 against San Juan to be paid to the Krohns [THIS PORTION OF THE COURT'S ORDER IS NOT APPEALED FROM];

(b) The transaction between the parties was an interest transaction (governed by Article 5069—Chapter 1), rather than a consumer credit—retail installment sale transaction as alleged by San Juan in its Motion for Summary Judgment (governed by Article 5069—Chapter 6) [THE

**494**

DETERMINATION BY THE COURT AS TO WHICH TEXAS STATUTE IS APPLICABLE TO THE TRANSACTION IS THE ONLY PORTION OF THE COURT'S ORDER BEING APPEALED BY SAN JUAN].

The court held that the total amount of statutory awards in the sum of $6,342.22 be off-set against the $8,975, the stipulated reasonable value of the swimming pool, and judgment entered for appellant in the sum of $3,650.78. A separate hearing was held on the matter of attorney's fees and appellant was ordered to pay certain attorney's fees to appellee less the sum of $750 to be paid by appellee.

The Krohns, by way of cross-point, appeal only from that portion of the trial court judgment which ordered them to pay a portion of their attorney's fees. The reasonableness of such fees is not before the court.

By two points of error appellant asserts that the trial court erred (1) in granting appellees that portion of the partial summary judgment relating to claims under Tex. Rev.Civ.Stat.Ann. art. 5069–1.02 (Vernon 1971), because the transaction between the parties was a consumer credit—retail installment sale transaction and not a money-interest transaction; (2) in denying appellant's motion for summary judgment because the transaction was a consumer credit-retail installment sale under Article 5069.

Both parties agree that the single dispositive issue on this appeal is whether the transaction was a Chapter 1 (interest transaction) or a Chapter 6 (retail installment sale transaction).

Chapter 1 of Article 5069 covers interest transactions. Article 5069–1.02 provides that, "[e]xcept as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum" and that "[a] greater rate of interest than ten percent per annum . . . shall be deemed usurious." Article 5069–1.06 provides that, "[a]ny person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall

forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court . . . ."

Chapter 6 covers retail installment sale transactions. Both parties agree that the transaction involves the sale of goods and services. The determinative factor is whether it is an interest transaction or a time-price differential transaction.

The only documents evidencing this transaction are (a) a contract between the parties dated February 19, 1978; (b) the Builder's & Mechanic's Lien Note dated March 7, 1978; and (c) the Builder's & Mechanic's Lien Contract dated March 7, 1978. These constitute the summary judgment evidence.

Article 5069–6.01(e) defines a "retail installment transaction" as "any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract . . ., which provides for a time price differential, . . . under which the buyer agrees to pay the unpaid balance in one or more installments, together with a time price differential." Article 5069–6.02 lists various requirements and disclosures which must be contained in a retail installment contract including (a) the cash sales price of the goods or services; (b) the amount of the down payment; (c) the difference between the above items; (d) provisions applicable to insurance coverage and official fees; (e) the principal balance; (f) the amount of the time-price differential; and (g) the amount of the balance owed by the buyer, which is the sum of the last two items above.

The contract which appellant asserts constitutes a retail installment contract does not disclose many of the credit terms required under Article 5069–6.01 and 5069–6.02 above. The only price shown in the contract is the contract price. The instrument does not contain a number of required provisions, including a "cash sale price," "credit price," "time sales price," "time balance," "principal balance," "time-price differential," "finance charge," and "annual percentage rate."

The note and mechanic's and material-man's lien contract are standard Bar forms. Neither set forth any of the above-listed requirements or disclosures. The note provides for interest at the rate of 10.86% per annum.

Both parties rely on *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex. Civ.App.—San Antonio 1978, writ ref'd n. r. e.). This court held that the transaction there was a retail installment transaction but held that the seller had violated certain provisions of Chapter 6 and rendered judgment in twice the amount of the finance charge for the violations of the Texas Consumer Credit Code. However, there is a great deal of difference in the credit documents involved in the *Anguiano* case and the documents here involved. The contract in *Anguiano* contained a "cash price," "unpaid balance," "amount financed," "finance charge," "total of payments," and "annual percentage rate." It also contained numerous other provisions such as insurance provisions called for under retail installment contracts under Chapter 6. Appellant urges that a substantial compliance is sufficient and we agree, but we disagree that there is substantial compliance in the case before us.

The documents which constitute the summary evidence in the case before us show that the transaction here involved did not meet the requirements of a retail installment sale transaction, either as to substance or as to form. We hold that the transaction is a Chapter 1 transaction rather than a Chapter 6 transaction.

If a transaction is actually a device to evade the usury laws, it is not saved by any attempted difference between a claimed "cash" price and ₂ claimed "credit" price. *Bradford v. Mack*, 359 S.W.2d 936 (Tex.Civ. App.—El Paso 1962, writ ref'd n. r. e.); 91 C.J.S. Usury § 18 (1955). The note here provides for interest at the rate of 10.86% per annum which is clearly in excess of the maximum 10% allowed for Chapter 1 transactions. The trial court correctly held that the mere sale of goods and services using

simple interest instruments constitutes usury where the interest charged or contracted for exceeds the maximum allowable under Chapter 1 of Article 5069.

■ Although Appellant agrees that the single dispositive issue to be here determined is whether this is an interest transaction within Chapter 1 of Article 5069 or a retail installment transaction within Chapter 6, appellant urges that the doctrine of election of remedies prohibits any further recovery by appellee. In support of this contention, it asserts that, since Section 8.01(h) of this article provides that the liability of any party for a violation thereof shall be in lieu of and not in addition to its liability under the federal Consumer Credit Protection Act, appellees were put to an election as to whether to pursue their remedy under the federal penalty provisions or under the state penalty provisions. It expresses the belief that, since $1,000 had been assessed by the court for violation of the federal statute, appellees cannot obtain a windfall for alleged violations of the state usury statutes. Appellant thus contends that the trial court's decision allowing twice the interest contracted for is clearly wrong. We disagree.

The trial court found, and we agree, that the transaction here involved was a Chapter 1 transaction under Article 5069, rather than a Chapter 6 transaction. Both parties agree that this is the single dispositive issue. The primary purpose of the Federal Truth in Lending Act is to give disclosures of essential credit information and not to regulate rates of interest. Chapter 1 of Article 5069 pertains to and regulates the amount of interest charged. It is not inconsistent that the same transaction may violate state usury laws as well as the disclosure provisions of the Federal Truth in Lending Act and appropriate penalties may be recovered for the violation of each.[1]

It is to be remembered that, after being sued and charged with various violations, appellant admitted every factual allegation in appellees' Original Petition and tendered

1. *Cf. McDonald v. Savoy*, 501 S.W.2d 400 (Tex. Civ.App.—San Antonio 1973, no writ).

the sum of $1,000 into the registry of the court to be used as payment of the federal statutory penalty. Although appellant urges the doctrine of election will preclude any further recovery by appellees, it cannot by some theory of election tender into the court the small penalty under the Federal Truth in Lending Act and preclude any possible recovery of a much larger amount against it for violation of the Texas usury law.

If this is a consumer credit installment sale transaction under Chapter 6, appellant did not comply with the requirement and disclosure provisions and would be liable for a statutory penalty of twice the amount of the time-price differential. Here, appellant made no attempt to comply with the disclosure requirements of Chapter 6. Under the Credit Code a seller may choose between charging an interest rate of not more than 10% per annum under Chapter 1 and not be subjected to the rigorous disclosure provisions of installment sales transactions, or charging an effective rate of interest in excess of 10% and be subject to the relevant provisions of a Chapter 6 transaction. Here, appellant is attempting to charge in excess of ten per cent per annum (10.86%), without complying with the disclosure requirement of Chapter 6. This it cannot do.

Appellant has not appealed from that portion of the judgment assessing a statutory penalty of $1,000 against it for violation of the federal Act and this portion of the court's order is not before us.

 By cross-point, appellees urge that the trial court erred in requiring appellees, the successful parties to the lawsuit, to pay a portion of the attorney's fees awarded by the court. We sustain this cross-point. Appellant does not challenge the reasonableness of the attorney's fees awarded and this issue is not before us. We can see no basis for the apportionment of any portion of the attorney's fees to appellees, the winning parties. It is the usual rule that any allowable attorney's fees are assessed against the losing party and the statutes here involved provide for this type of assessment. Tex. Rev.Civ.Stat.Ann. art. 5069–1.06(a) (Vernon 1971).

The judgment is reformed by providing that all attorney's fees be assessed against appellant and that no portion thereof be apportioned to appellees. As reformed, the judgment is affirmed.