**JIM WALTER HOMES, INC., Appellant,**

v.

**Charles E. WHITE, et ux., Appellees.**

**No. 8536.**

Court of Civil Appeals of Texas, Beaumont.

May 28, 1981.

Charles C. Murray, McAllen, for appellant.

Hector Gonzales, Sinton, Robert J. Patterson, Corpus Christi, for appellees.

DIES, Chief Justice.

Appellees, Charles E. White and wife, Sue White, sued appellant, Jim Walter Homes, Inc., for violations of Chapter 6 of the Texas Consumer Credit Code, *Articles 5069–6.01* (1971) et seq.[1] (hereinafter "Credit Code"), and for treble damages under the Deceptive Trade Practices—Consumer Protection Act, *Tex.Bus. & Com. Code, § 17.41* et seq. (Supp. 1980–1981) (hereafter DTPA). The Credit Code claim was tried before the court, and the DTPA claim was tried before a jury. The trial court granted appellees (plaintiffs below) a judgment on both claims from which Jim Walter perfects this appeal.

■ Appellant's first four points contend there was no, or insufficient, evidence that appellees relied upon the representation that the house in question would be built in a good, substantial and workmanlike manner. We review these points under the direction of *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965), and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The mechanic's lien contract entered into by the parties makes this workmanship representation, and White testified he read it. The record is certainly replete with testimony of defects in workmanship and materials. If White never uttered the words, "I relied on this," the record certainly reveals appellee was "adversely affected" by the workmanship and materials which are the words used in *Section 17.50(a)* DTPA. These points are overruled.

■ Appellant's fifth point contends, "The trial court erred in rendering judgment for plaintiffs on their claims under *Section 17.46(a)* and *Section 17.50(a)(3)*, *Tex.Bus. & Com. Code*, since there is no evidence that defendant's conduct was intentional or knowing and since intentional and knowing conduct is essential under those sections." And, its sixth point urges, "In the alternative to Point of Error No. Five, the trial court erred in overruling the objection of Defendant to the charge of the court on the ground that no issue was submitted inquiring about whether Defendant's conduct alleged to be actionable under *Section 17.46(a)* and *Section 17.50(a)(3)*, *Tex.Bus. & Com. Code*, was done intentionally or knowingly, since intentional or knowing conduct is essential under those sections." This contention has been answered by the Texas Supreme Court in *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980). This point is overruled.

■ In Point of Error Seven, appellant contends that " 'false, misleading or deceptive acts or practices' in *Section 17.46(a)* and ... 'unconscionable' " as used in "*Section 17.50(a)(3)* ... are unconstitutionally vague in violation of the Fourteenth Amendment to the United States Constitution in *Article* One, Section 19 of the Texas Constitution." This contention has likewise been rejected in *Pennington v. Singleton*, supra. This point is overruled.

In its Eighth Point appellant urges the court erred in rendering judgment for appellees on their claims under the DTPA because such claims are barred by the two-year Statute of Limitations, *Article 5526* (1958).[2]

Appellees contracted with appellant for the construction of their home in February 1975. They moved into the house in May 1975. Appellees did not file suit until October 1978, more than three years after completion of the alleged wrongful acts.

In Special Issue No. 15, the jury was asked:

"With respect to the following alleged facts, do you find from a preponderance of the evidence that plaintiffs knew or should have known in the exercise of ordinary care of their existence on or before October 24, 1976?" (two years prior to filing suit)

The jury answered, "We do not," to eight alleged wrongful acts by appellant. There is no challenge to these jury findings.

1. All statutory references, unless otherwise expressly indicated, are to *Tex.Rev.Civ.Stat.Ann.*

2. *Tex.Bus. & Com. Code, § 17.56A* (Supp. 1980–1981) was not effective until August 27, 1979, after the cause arose and suit was filed; *Section 17.56A* is not retroactive in application.

The Mechanic's Lien Contract involved here provides:

"Builder agrees to build, construct, and complete above mentioned improvements within 180 days from this date in a good, substantial, workmanlike manner, and to furnish and provide all labor and material used in the construction and erection thereof."

Except for two of the alleged wrongful acts (submitted to the jury in Special Issue 15), all of them relate to this provision in the contract. The other two (charging for a building code fee where none existed) the jury found were not discovered prior to the limitation period.

We believe this suit is grounded on a written contract; and, therefore, the four-year statute, *Article 5527* (1958), would apply for "[i]t is sufficient if the obligation or liability grows out of a written instrument, not remotely but immediately, or if the written instrument acknowledges a state of facts which, by fair implication the obligation or liability arises." *International Printing Pressmen and Ass'ts Un. v. Smith*, 145 Tex. 399, 198 S.W.2d 729, 736 (1946). This identical holding was also the court's decision in *Holifield v. Coronado Bldg., Inc.*, 594 S.W.2d 214, 216 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). See also, *Richman v. Watel*, 565 S.W.2d 101 (Tex.Civ.App.—Waco 1978), writ ref'd n. r. e., per curiam, 576 S.W.2d 779 (1978).

Appellant's Ninth Point argues that appellees were not a "consumer" under the Act because it was not until September 1, 1975, the definition of "goods" was expanded to include real property. We reject this argument as did *Young v. DeGuerin*, 591 S.W.2d 296, 299 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ), and *Holifield v. Coronado*, supra; *Woods v. Littleton*, 554 S.W.2d 662, 667 (Tex.1977). This point is overruled.

Appellant's Tenth Point urges, "The Trial Court erred in rendering judgment for Plaintiffs on their claim under *Section 17.-46(a)* ... since that claim was based on breach of warranty and since breach of warranty is not actionable under *Section 17.46(a)*." However, that point is without merit as such was allowed in *Boman v. Woodmansee*, 554 S.W.2d 33 (Tex.Civ.App.—Austin 1977, no writ); *Woods v. Littleton*, supra; *Holifield v. Coronado*, supra.

As we understand this contention, appellant contends appellees "bootstrapped" a claim under *Section 17.50(a)(2)* into one under *Section 17.46(a)*.

*Section 17.50(a)(2)* provides: "A consumer may maintain an action where any of the following constitute a producing cause of actual damages ..., (2) breach of an express or implied warranty."

*Section 17.50(a)(1)* specifically allows a consumer to maintain an action for any "act or practice that is specifically enumerated in a subdivision of *Subsection (b)* of *Section 17.46* of this subchapter," and *Section 17.-50(a)(3)* for "any unconscionable action or course of action by any person...."

The jury in its answer to Special Issue 2(a) found that appellant represented that the house in question was of a particular quality, or standard of quality, when it was of another and that this was a producing cause of adverse effect on appellees. This tracks exactly Item 7 of the "laundry list" of *17.46(b)*.

Likewise, the jury in Issue 2(c) found that appellant made the identical representation found in Item 12 of the "laundry list." Appellant makes no complaint that the evidence was not sufficient to support these findings. At any rate, a judgment may be sustained on grounds independent of that to which the alleged error relates. *Texas Pacific Railway Company v. Snider*, 159 Tex. 380, 321 S.W.2d 280 (1959). *Ramm v. Ramm*, 294 S.W.2d 174, 178 (Tex.Civ.App.—Galveston 1956, writ ref'd n. r. e.). This point is overruled.

Appellant's Points 11 through 14 all relate to Special Issues Nos. 3 and 4. In these issues, the jury found that appellant charged appellees for complying with building codes, electrical codes, or plumbing codes, where none existed in Three Rivers, Texas, and this constituted an unisconsciona-

ble course of action. These charges were enumerated in a "Breakdown Sheet," which appellant insists is an "internal document." Nevertheless, the document does reflect charges of $400 for these fees, and the evidence is clear there were no such fees in Three Rivers where this house was constructed. Further, during the trial, appellant tendered this money back to appellees which had the effect of an admission that appellee was charged $400 for nonexistent fees. See *State Fair of Texas v. Seay*, 98 S.W.2d 232 (Tex.Civ.App.—Fort Worth 1936, writ dism'd). And again, there are other findings on which the trial court could have based its judgment than Issues 3 and 4. *Texas Pacific Railway Company v. Snider*, supra. These points are overruled.

Appellant cites no cases in support of its Points Fifteen and Sixteen, and they are overruled. Appellant has waived its Seventeenth Point.

Point of Error Eighteen urges the trial court erred in granting appellees a judgment for penalties under Chapter 8 of the Texas Consumer Credit Code, as set out in *Article 5069–8.01* et seq. (1971).

The contract in question was labeled a "Building Contract"; it provided for a first lien on the appellees' real estate and required appellees to pay for the house in regular monthly installments for a certain period of time. *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App. —San Antonio 1978, writ ref'd n. r. e.), held that such a contract to furnish goods and services in construction of a new home is governed by Chapter 6 of the Texas Consumer Credit Code, *Article 5069–6.01* et seq. The court found a violation of Chapter 6 because the contract in question was not labeled a "Retail Installment Contract" and because it provided for a first lien on real estate. Following the *Anguiano* decision, appellant sent appellees a letter stating it would refund the portion of payments previously paid and attributable to the time-price differential charged in excess of an annual percentage rate of 10 percent and informing appellees that future payments would be decreased to reflect the reduction

of the time-price differential to an annual rate of 10 percent. No such waiver was ever made. The trial court determined that the cure was ineffective and awarded appellees the statutory penalty of $20,498.

The cure provision of Chapter 8 of the Credit Code [*Article 5069–8.01(c)(1)* (Supp. 1971–80)] provides that:

"A person has no liability to an obligator for a violation of this Subtitle ... if within 60 days such person corrects such violation as to such obligator by performing the required duty or act or by refunding any amount in excess of that authorized by law."

This provision was enacted in 1977 but applies to certain transactions such as we have here entered into prior to August 31, 1977, and not pending on the effective date of the Act. (1977 Tex.Gen.Laws, Chap. 111, Sec. 3 at p. 231). See also *Article 5069–8.01* footnote Sec. 3 at p. 145 (Supp. 1971–1981).

Appellees urge that nothing in *Anguiano v. Jim Walter Homes, Inc.*, supra, allows a first lien in the event of the lower interest. We disagree. The court specifically said:

"The effect of the statute is to limit first lien transactions to 10 percent or less. By this scheme creditors are permitted to choose between higher rates and less security or lower rates and greater security."

*Anguiano v. Jim Walter Homes, Inc.*, supra at 255. This intention was again expressed in *Jim Walter Homes, Inc. v. Gibbens*, 608 S.W.2d 706, 710 (Tex.Civ.App.—San Antonio 1980, writ ref'd n. r. e.). The Legislature amended Chapter 6 of the Credit Code in 1977, *Article 6.05(7)* as follows:

"No retail installment contract ... shall: (7) provide for or grant a first lien upon real estate to secure such obligations, except, ... (b) such lien as is provided for or granted by a contract or series of contracts for the sale or construction and sale of a structure to be used as a residence so long as the time-price differential does not exceed an annual percentage rate of 10 percent."

We hold that appellant cured its violations regarding the first lien on real estate of the Credit Code and thus sustain this point of error.

 Appellant's Nineteenth Point contends Chapter 6 of the Texas Consumer Credit Code, *Article 5069–6.01* et seq., violates Article One, Section III of the Texas Constitution. It reads:

"All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

This identical argument was made by appellant in *Anguiano v. Jim Walter Homes, Inc.*, supra, and disposed of by the court on p. 254. This point is overruled.

 Point of Error No. Twenty contends Chapter 6 of the Consumer Credit Code, *Article 5069–6.01* et seq., violates Sections 37 and 50 of Art. XVI of the Texas Constitution. That contention was disposed of in the *Anguiano v. Jim Walter Homes, Inc.*, supra at 253, and this point is likewise overruled. In Point of Error Twenty-One, appellant again argues as it did in the *Anguiano* case that the contract between these parties for the construction of the house is not covered by Chapter 6, by saying, "It is becoming apparent that such a holding is not free from problems."

This could be perhaps said of most, if not all, decisions, but, when the Texas Supreme Court refused the writ n. r. e., we take it that closes the matter. This point is overruled.

 Appellant's last and Twenty-Second Point urges appellees should be required to elect between the Credit Code and the DTPA, and not be entitled to recover under both acts. However, in *Jack Criswell Lincoln-Mercury, Inc. v. Haith*, 590 S.W.2d 616 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.), plaintiff was allowed recovery under both acts. We have no authority to enact a "judicial statute." See *Pyramid v. Mason*, 617 S.W.2d 727 (Tex.Civ.App.—Beaumont 1981).

 Appellees have once cross-point urging us to restore the remittitur ordered by the trial court. We do not find an abuse of discretion in this regard and overrule the cross-point. See *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959).

we now proceed to render the judgment required by reason of this opinion: It is ordered, adjudged, and decreed that appellees, Charles E. White and Sue White, have and recover of and from appellant, Jim Walter Homes, Inc., the sum of thirty-nine thousand sixty and no/100 dollars ($39,060) with interest thereon at the rate of 9 percent per annum from the date of the judgment until paid. It is further ordered, adjudged, and decreed that costs of this suit shall be taxed as follows: 60 percent shall be taxed against appellant; 40 percent shall be taxed against appellees.

AFFIRMED in part.

REVERSED and RENDERED in part.