**WAYNE STRAND PONTIAC–GMC, et al., Appellants,**

**v.**

**Juan MOLINA, Appellee.**

**No. 2405cv.**

Court of Appeals of Texas, Corpus Christi.

Jan. 27, 1983.

Rehearing Denied March. 3, 1983.

William H. Berry, Jr., Lee Casstevens, Wood & Burney, Andrew Lehrman, Sorrell,

Anderson & Sorrell, Corpus Christi, for appellants.

Marcel Greenia, Corpus Christi, for appellee.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a judgment rendered in a consumer suit brought under the Texas Deceptive Trade Practices Act, the Texas Consumer Credit Code and the Federal Truth in Lending Act. Trial plaintiff Juan Molina (Molina), appellee in this action, brought suit against Wayne Strand Pontiac-GMC, Inc. (Wayne Strand), General Motors Corporation (GMC) and General Motors Acceptance Corporation (GMAC) in connection with the purchase of a 1977 GMC three-quarter ton pick-up truck. Judgment was rendered that Molina (appellee in this Court) take nothing in his suit against GMC and GMAC, but that he recover against Wayne Strand the sum of Three Thousand Seven Hundred Eighty-three Dollars and Ten Cents, $3,783.10, i.e., twice the amount of the finance charge of One Thousand Eight Hundred Ninety-one Dollars and Fifty-five Cents, $1,891.55.[1] Wayne Strand has timely perfected an appeal from that judgment. Molina has presented two cross-points.

For the reasons hereinafter stated, we reverse and render a take nothing judgment.

In twelve points of error, Wayne Strand contends that the trial court erred in granting judgment for Molina asserting that Molina's claim under the Federal Truth in Lending Act was untimely filed. It further asserts that special issues were improperly submitted to the jury, that jury answers to special issues submitted conflicted with the

final judgment, that there existed either no, or, alternatively, insufficient evidence to support vital jury findings, and that the trial court improperly applied the Texas Consumer Credit Code. Additionally, it contends that the "de minimis" nature of the actual irregularity in the contract does not warrant this Court's affirmation of the judgment.

Concurrently, Molina, by a cross-point, contends that, consistent with favorable jury findings, this Court should render judgment for him for reasonable attorneys' fees (as found by the jury). We will address first, the statute of limitations question.

■ In Wayne Strand's points of error 1, 10, and essentially 9, the contention is made that Molina should be denied recovery under the Federal Truth in Lending Act on the proposition that his suit was untimely filed. As the retail installment contract, made the basis of this suit, was executed on May 31, 1977, and Molina's original petition was filed on May 30, 1978, we find no merit in Wayne Strand's assertion that the suit was barred by 15 U.S.C. § 1640(e) which provides for a one (1) year statute of limitations for claims arising under the Federal Truth in Lending Act.

■ Moreover, this Court notes that the Texas Consumer Credit Code is more liberal than the Federal Act and provides for a four-year statute of limitations, or in the case of a retail installment transaction, two years from the date of the final entry made thereon, *whichever is later.* Accordingly, we find that Molina's cause of action was not barred by any applicable statutes of limitation. Wayne Strand's points of error 1 and 10 are overruled.

■ Wayne Strand next contends that the $5.53 overcharge is "de minimis non curat lex" as a matter of law. We agree.

---

1. On May 31, 1977, Juan Molina executed a contract with Wayne Strand Pontiac, GMC, Inc., for the purchase of a new 1977 GMC three-quarter ton pick-up truck. The contract called for a down payment of one thousand dollars, $1,000.00, and the financing of seven thousand two hundred five dollars and twenty-three cents, $7,205.23, for a period of forty-two months, at an annual percentage rate of 13.61%, resulting in a finance charge of $1,891.55.

The doctrine stands for the proposition that "[t]he law does not care for, or take notice of, very small or trifling matters." *Thornhill v. Sharpstown Dodge Sales, Inc.,* 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ). In the present suit, the $5.53 error arises out of the computation of the license plate charge assessed on the contract of sale. Through an error made by an employee of Wayne Strand, Molina was charged a license fee of $33.47 instead of a fee of $27.94 which Wayne Strand actually later paid the State of Texas for the plates.

Under varied circumstances, overcharges have been held to be "*de minimis.*" See *Thornhill,* supra, at 153; *Ford Motor Co. v. Zapata,* 605 S.W.2d 362 (Tex.Civ.App.—Beaumont 1980), reversed on other grounds at 615 S.W.2d 198 (Tex.1981); *Ford Motor Credit Co. v. Long,* 608 S.W.2d 293 (Tex.Civ. App.—Beaumont 1980, writ ref'd n.r.e.).

In *Thornhill,* a miscomputation of the proper interest rate resulted in an overcharge of $.01 cent a month over the 42 month life of the contract. The court pointed out that the difference was so slight that competent mathematicians might have disagreed upon just exactly what the proper amount should have been. *Thornhill* at 152.

*Zapata* addressed an overcharge very similar to the $5.53 overcharge we find before us today. In that case, plaintiff contended that he was entitled to recover under the code because of a $7.11 overcharge in the license or registration fee. *Zapata* at 366. The court held the charge was "*de minimis*" but resolved the issue on another basis.

Finally, in *Long,* the Beaumont Court held a $25.00 acquisition fee "*de minimis*"; finding that while it was not provided for as a valid charge under the code, neither was it prohibited. *Long,* at 296. While *Long* does not state how the acquisition fee was provided for on the face of the contract, a reading of Tex.Civ.Stat.Ann., art. 5069–7.04 (Vernon's Supp.1981) indicates that an acquisition charge is not a direct charge made at the time a contract is initiated, but rather is a charge made at the time a contract is prepaid and, made out of any applicable refund credit.

The $5.53 overcharge before us in the instant case is quite similar to the charges mentioned in the above cases. While the charge was properly labeled, it was simply miscalculated. We hold that the $5.53 overcharge is "*de minimis.*" Wayne Strand's points of error 2, 7 and 8 are sustained.

For the reasons just stated, we also hold that the charging of Molina by Wayne Strand the sum of $2.50, called "official fees" in the contract, is governed by the doctrine of "*de minimis.*"

We are aware of the argument made in the dissent hereto that a distinction should be made, in applying the doctrine, between overcharges which result from miscalculations of proper charges and charges which were never authorized in the first place, and, therefore, constituted misrepresentations. We do not believe that this distinction should control, however. The very nature of the "*de minimis*" doctrine, even the very words used to entitle the doctrine, relate solely to the fact that it is a doctrine of convenience—one that has as its purpose the relief of the courts from trivial matters. This being so, we see no logic in restricting its use to a limited class of transaction.

As further reasons for holding as we do, we note that, as previously stated, in *Long,* supra, a $25.00 acquisition fee was found to be "*de minimis*" by the Beaumont court. This Court (Corpus Christi) has found the failure to include the sales tax as part of the "cash sale price" to be "*de minimis.*" *Grant v. Friendly Chrysler-Plymouth, Inc.,* 612 S.W.2d 667 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The Austin court applied the doctrine in *Hight v. Jim Bass Ford, Inc.,* 552 S.W.2d 490 (Tex.Civ. App.—Austin 1977, writ ref'd n.r.e.) in holding that the use of ten-point type in a sales contract did not violate Tex.Rev.Civ.Stat. Ann., art. 5069–7.02(2) (Vernon 1968) which required ten-point *bold* type.

Wayne Strand's point of error 3 is sustained.

Our holding in sustaining Wayne Strand's points of error 2, 3, 7 and 8 make it unnecessary that we rule upon Wayne Strand's remaining points of error. Likewise, Molina's two cross-points are disposed of thereby.

The judgment of the trial court is reversed, and judgment is here rendered that appellee (plaintiff) take nothing with all costs charged to appellee (plaintiff).

BISSETT, Justice, dissenting.

I respectfully dissent from the majority's broad application of the doctrine of "de minimis non curat lex." I would hold that the $2.00 inspection fee and the $.50 notary fee for the transfer of title, charged as "official fees" are not governed by the doctrine of "de minimis," since their inclusion as "official fees" constituted a *misrepresentation* in the "Retail Installment Contract," and, as such, is not subject to the doctrine.

With respect to the pertinent charges to Molina, the contract here involved, permitted Wayne Strand to charge:

| | | |
|---|---|---|
| "E. | Official Fees | $ 2.50 |
| F. | Taxes Not Included in Cash Price | $N.A. |
| G. | License and/or Registration Fees (itemize) | $33.47 |
| H. | Certificate of Title Fee | $ .75 |
| I. | Other (Describe) | $N.A." |

As illustrated, on the face of the retail installment contract initiated, a $2.50 charge was made for *official* fees. At the trial, testimony was presented which established that $2.00 of this charge was made to pay for the state inspection of the vehicle purchased. The remaining $.50 was to cover a notary charge in connection with the transfer of the title to Molina.

Article 5069–7.01(g), at the time of the contract, provided:

" 'Official Fees' means the amount of the fees prescribed by law for filing, recording or otherwise perfecting and, in addition for releasing or satisfying a retained title, lien or other security interest created in connection with a retail installment transaction." TEX.CIV.STAT.ANN. art. 5069–7.01(g) (1971)—now amended.

While the transfer of a title for a motor vehicle must be notarized when the vehicle is being disposed of at a subsequent sale, Tex.Civ.Stat.Ann. art. 6687–1, § 33 (1977), no such requirement is made when the transfer is in connection with a new vehicle.[1]

Under the current law, a certificate of inspection is required prior to the registration of a motor vehicle under the Certificate of Title Act, Tex.Civ.Stat.Ann. art. 6701d, § 142A (Supp.1981). However, such was not the case at the time the parties entered into the contract in the instant case.

Neither the $2.00 charge made for the certificate of title nor the $.50 charge for notarization of the transfer of title constituted an *official fee* under the definition applicable at the time of the formation of

---

1. Through the analysis of four different Texas Code sections it becomes apparent that more stringent registration requirements are applicable to the purchase and sale of a "used vehicle" than are applicable to the purchase and sale of a "new vehicle."

Article 6687–1, § 33 requires the *notarization of a title transfer* at a *subsequent* sale (emphasis added). There is, however, no such requirement at a first sale. In differentiating between the two types of sales, the code, at art. 6687–1, § 8, defines "subsequent sale" as "[t]he bargain, sale, transfer, or delivery, with intent to pass an interest therein, other than a lien, of a *motor vehicle which has been registered or licensed within this state* ...." (Emphasis added.) Correspondingly, the code, at art. 6687–1, § 7, defines "first sale" as "the bargain, sale, transfer, or delivery with intent to pass an interest therein, other than a lien, of *a motor vehicle which has not been previously registered or licensed in this state or elsewhere,* ..." (Emphasis added.)

In art. 6687–1, § 9, a "new car" is defined as "*a motor vehicle which has never been the subject of a first sale* either within this state or elsewhere." (Emphasis added.) Since the evidence adduced at trial shows that the vehicle purchased by Mr. Molina was a new 1977 truck which would necessarily fall within the category of a first sale, it is clear that the transfer of the title before a notary and the payment of a notary fee was not required by state law.

the contract in question.[2]

As a retail installment contract was required to set forth the aggregate amount of official fees, Tex.Civ.Stat.Ann. art. 5069–7.02(6)(e) (now amended), I believe that the unauthorized charges reflected as official fees amounted to a violation of the Texas Consumer Credit Act as it then read. Since the $2.50 for "official fees" reflect charges misrepresented on the face of the contract rather than merely miscalculated yet properly represented charges, it is distinguishable from the $5.53 overcharge addressed by the majority. The purpose of both the Texas Consumer Credit Code and the Federal Truth in Lending Act is to educate and inform the consumer through proper disclosures. See: Declaration of Legislative Intent, Texas Laws 1967, Chapter 274, Section 1, at 608. Tex.Civ.Stat.Ann., volume 15, pp. 1–2 (1971) and 15 U.S.C.S. § 1601(a) (1982). This purpose is frustrated if the doctrine of "de minimis" is extended to *misrepresentations* in consumer contracts.

"It is the duty of the Legislature to decide what should be contained in a retail installment contract and for the court to decide that such a plain requirement as contained in the Code is very small or a trifling matter would be to encroach into the exclusive domain of the Legislature, and this is not the proper function of the court." *Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249, at 255 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

Admittedly, the $2.50, charged as "official fees," of itself, is trivial in amount. However, that is not the issue presented in this appeal. The issue to be resolved is whether misrepresentation, regardless of the amount of money involved, will be excused by application of the "de minimis" doctrine. The majority would broaden the application of the "de minimis" doctrine to cover *any* situation in which merely the amount criteria was satisfied. Such a result would not only frustrate, but would, in fact, defeat the very purpose of legislation akin to the Texas Deceptive Trade Practices Act and the Texas Consumer Credit Code.

Under the majority holding, a seller who is subject to the provisions of the Deceptive Trade Practices Act or the Consumer Credit Code could uniformly overcharge all its customers some as yet "undetermined amount," provided it was careful to ensure that this amount was small in proportion to the total amount involved, and have complete impunity from prosecution under either the Deceptive Trade Practices Act or the Consumer Credit Code. If such had been the intent of the legislature, they would have so provided in these acts.

The majority relies on several cases where the courts have ruled on the "de minimis" issue. However, all of these cases are clearly factually distinguishable from the case before us. Further, none of them address a situation in which an actual misrepresentation was made.

Under *Thornhill* and *Zapata,* relied upon by the majority, miscalculations in amounts were found to be de minimis in nature. In *Long,* also relied upon by the majority, an acquisition fee which was neither provided for nor prohibited was found to be de minimis. In all of these cases, the doctrine of "de minimis" was applied to charges which were clearly reflected and properly disclosed on the contracts in question and not

2. In 1979, § 5069–7.01(g) was amended to provide that:
" 'Itemized Charges' *however denominated* or expressed means those amounts, if any, included in the contract but not included in the cash price for charges made to the buyer for:
(i) any registration, certificate of title, and license fees;
(ii) any taxes;
(iii) any other fees or *charges that are set or prescribed by law,* that are not more than the amounts allowed by law, *and are connected*

with the sale or inspection of a motor vehicle; . . ." (Emphasis added.)
While this revision would expressly allow the imposition of a charge for a certificate of inspection under the newly designated heading of "itemized charges" it would still not provide for a notary charge in connection with the title transfer of a new vehicle as "itemized charges" since such a charge is not one "prescribed by law." NOTE: The term "itemized charges" has now replaced the term "official fees" in the Deceptive Trade Practices Act.

to a situation in which improper disclosures were made. These cases are authority for holding that the overcharge of $5.53, because of a miscalculation of authorized charges, is controlled by the doctrine of "de minimis"; but they are not authority for holding that such doctrine immunizes Wayne Strand against the penalties provided by the Texas Consumer Credit Code where the charge was made because of a misrepresentation.

The majority also relies on two cases in which a *proposition* rather than an *amount* was found to be "de minimis." In *Hight v. Jim Bass Ford, Inc.,* the Austin Court of Appeals addressed a violation of Vernon's Ann.Civ.St. art. 5069–7.02(4) which requires that any acknowledgement by the buyer of delivery of a copy of the contract be printed in a size equal to at least ten-point *bold* type. The acknowledgment before the court had been printed in ten-point type. The court found the violation to be de minimis. The court also suggested, however, that a different result might have occurred had the appellant been either *deceived or injured.* A misrepresentation was not involved.

Finally, the majority relies on one of our own opinions, in which we found that the *failure* to include sales tax as part of the "cash sale price" in an automobile retail installment contract was "de minimis." *Grant v. Friendly Chrysler-Plymouth, Inc.,* 612 S.W.2d 667. This is clearly distinguishable from the case at bar, as it is an omission rather than an inclusion. This distinction is also illustrated by examining *Smith v. Chapman,* 436 F.Supp. 58 (W.D.Texas 1977); and *Chapman v. Miller,* 575 S.W.2d 581 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.) where the *inclusion* of sales tax as an "official fee" was found to be a violation of the Texas Consumer Credit Code.

For the reason stated above, I believe that the inclusion of the $2.50 charges as "official fees" is a violation of the Texas Consumer Credit Code and would affirm the trial court's finding of a violation of the same. Since the majority did not reach appellants' remaining points of error or appellee's cross-points, I do not address these points either.

## OPINION ON MOTION FOR REHEARING

KENNEDY, Justice.

On motion for rehearing appellee asserts that this Court erred in ruling that its holding on appellants' points of error two, three, seven and eight disposed of appellee's cross-points of error one and two. Appellee's cross-point of error one complains of the trial court's submission of Special Issue No. 13. Special Issue No. 13 was submitted as follows:

"Do you find from the preponderance of the evidence that the Dealer had no written notice of Plaintiffs' complaints of unlawful conduct, breaches of express or implied warranty, or any unconscionable course of action prior to suit being filed?"

Appellee's equivocal objection before the trial court was that appellee could not and "was not entitled" to give notice due to a change in ownership after Mr. Molina refused to pick up the truck. Alternatively, appellee thought the issue too broad.

On appeal, however, appellee argues that the Uniform Commercial Code controls and that the buyer need only notify the seller as provided under Tex.Bus. & Com.Code Ann. § 2.607(c)(1) and § 1.201(26) (Tex.UCC) (Vernon 1968).

The objection leveled at trial addressed the necessity of notice under the factual circumstances, whereas on appeal there is a legal argument as to what constitutes proper notice. The appellant has thus failed to point out distinctly in his objection to the charge of the court the grounds which he asserts here. The defect is therefore waived. Rule 274, Tex.R.Civ.P. (Vernon 1976); *Crutcher-Rolfs-Cummings, Inc. v. Ballard,* 540 S.W.2d 380 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.), 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). Appellee's cross-point of error number one is overruled.

Appellee's second cross-point of error requests this Court correct the trial court's failure to include attorneys' fees in the judgment, as found by the jury.

Appellee did not recover under either theory upon which he relied, and is therefore not entitled to attorneys' fees. *Harrison v. Dallas Court Reporting College, Inc.,* 589 S.W.2d 813, 817 (Tex.Civ.App.—Dallas 1979, no writ); *Burnett v. James,* 564 S.W.2d 407, 409 (Tex.Civ.App.—Dallas 1978, writ dism'd); *see Rodriguez v. Jim Walter Homes, Inc.,* 624 S.W.2d 333 (Tex.App.—Corpus Christi 1981, no writ); *Seitz v. Lamar Savings Association,* 618 S.W.2d 142 (Tex.Civ.App.—Austin 1981, no writ). Appellee's cross-point of error number two is overruled.

Appellee's motion for rehearing is OVERRULED.

BISSETT, Justice, dissenting.

I respectfully dissent with the majority's opinion and would grant appellee's motion for rehearing based upon the rationale set forth in my original dissenting opinion.