**JIM WALTER HOMES, INC., Appellant,**

v.

**Javier CHAPA, Appellee.**

No. 1680.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 12, 1981.

Rehearing Denied April 23, 1981.

---

Charles C. Murray, Atlas & Hall, McAllen, for appellant.

Hector Gonzalez, Sinton, Robert J. Patterson, Law Offices of Latham & Patterson, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is an appeal by Jim Walter Homes, Inc., defendant-appellant, from a judgment in favor of Javier Chapa, plaintiff-appellee. Appellant was found to have violated the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com. Code Ann. § 17.41 et seq. [hereinafter "DTPA"] and the Texas Consumer Credit Code, Tex. Rev.Civ.Stat.Ann. art. 5069–1.01 et seq. [hereinafter "Credit Code"] in the sale of a new home to plaintiff. The alleged violations under the DTPA were tried to a jury, while the alleged violations under the Credit Code were tried to the Court. Judgment was rendered upon all violations in the amount of $55,201.00.

The defendant, in the trial below, challenges the sufficiency of the evidence to sustain the jury findings, the manner in which the special issues regarding the alleged DTPA violations were submitted, and the attempted cure of the alleged violations under the Credit Code claim.

On February 14, 1976, plaintiff signed a contract wherein defendant agreed to construct a new house on the plaintiff's unencumbered property in Zapata County, Texas. The cash price of the house was $12,385.00, the finance charge was $13,463.00, for a total sales price of $25,848.00. To secure the payment of the debt, defendant required that plaintiff execute a Mechanic's Lien Contract. The total amount was to be repaid in 180 monthly installments of $413.00 each. The Building Contract disclosed that an annual percentage rate of 11.4% interest was charged.

At the time of the purchase, several written and oral representations were made to plaintiff by the defendant or his representative. Included was defendant's promise that the house would comply with the local codes including a promise of at least one electrical outlet on each wall, and that the construction would be performed in a "good, substantial and workmanlike manner."

During the middle of May, 1976, plaintiff and his wife moved into the new home. Approximately two weeks after they moved in, plaintiff began to notice defects in the construction of the house. The sheetrock began to sag, the plumbing leaked, the electricity would arbitrarily cut off, and he noticed numerous problems with the floors and windows. Plaintiff then called defendant's Laredo office in an attempt to have the problems corrected. After repeated calls little, if anything, was repaired.

On October 24, 1978, plaintiff filed suit against the defendant, Jim Walter Homes, Inc., alleging numerous violations of the DTPA and the Credit Code. During the trial of the case, plaintiff testified as to the representations made to him by the salesman and other employees concerning the defects that appeared in the house after he moved in, and the documents he signed. George Clower, an architect and expert witness, was called by plaintiff, Clower testified as to how much he believed it would cost to repair the house to bring it in compliance with the local building code. This testimony was rebutted by defendant's expert witness.

The jury found three violations of the DTPA. They were as follows: 1) defendant represented in the Mechanic's Lien Contract that the home was to be built in a "good, substantial and workmanlike manner" when it wasn't; 2) defendant advertised to plaintiff that the electrical package would be installed according to local codes, with an intent not to sell as advertised; and 3) that defendant charged plaintiff for local codes, when no such codes were in force; and that the charge was a false, misleading or deceptive act or practice. The jury found that the reasonable cost of repairs for the first two violations was $8,500.00, and assessed a penalty of $925.00 for the last violation. Exemplary damages were awarded in the amount of $6,000.00. Judgment was entered on the jury findings under the DTPA, trebling the actual damages of $9,425.00 to $28,275.00. In addition, the trial court awarded $26,926.00 for violations of the Credit Code, that amount being twice the time-price differential of $13,463.00. The exemplary damages were not awarded by the trial court because plaintiff failed to move for judgment on them.

■ Appellant Jim Walter Homes, Inc., first contends that plaintiff's claim under the DTPA concerning the representations made in the Mechanic's Lien Contract should be governed by the two-year statute of limitation set out in Article 5526, Tex. Rev.Civ.Stat.Ann. (1958). He argues that plaintiff's claim is barred by his failure to bring suit within two years of the discovery of his cause of action. Article 5526 (in effect at the time of this action) requires that an action for debt, where the indebtedness is not evidenced by a contract in writing, be brought within two years. Article 5527 provides that in actions for a debt where the indebtedness is evidenced by or

founded upon any contract in writing, the same may be brought within four years after the cause of action accrued.

Liability, in the instant case, arises out of the written Mechanic's Lien Contract; accordingly, the four-year statute of limitations applies. Plaintiff's DTPA action was filed well within four years. Appellant's eleventh and twelfth points of error are overruled.

■ Next, defendant complains that the special issues regarding the DTPA violations were incorrectly submitted. Jim Walter Homes argues that several additional elements, such as reliance, materiality and proximate cause, which are not in the text of the DTPA, should have been included in the submitted special issues.

When submitting special issues to the jury under a DTPA claim, the issue should be submitted in terms as similar as possible to the statute itself. The language used in the submission of the issue may, of course, be altered somewhat to conform to the evidence in the case. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (Tex.Sup.1980). Reviewing the submitted issues, we find that they closely follow the wording of the statute with only minor alterations or deletions to conform to the pleadings and evidence. All of appellant's points of error regarding issue submission are overruled.

■ Next, appellant Jim Walter Homes, Inc., contends that the jury findings are based upon insufficient evidence, or in the alternative, that there is no evidence to support the findings. In deciding the no-evidence points, we are guided by the law as set out in *In re King's Estate* 150 Tex. 662, 244 S.W.2d 660 (1951) and *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965). After carefully reviewing the record in light of these cases, we conclude that the evidence fully supports the findings of the court and jury. These points of error regarding the legal and factual insufficiency of the evidence are overruled.

■ Defendant also contends that the misrepresentation of "good, substantial, workmanlike manner" of construction is not sufficient to be a violation of the DTPA Section 17.46(b)(7). We disagree. Section 17.46(b)(7) provides:

"(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

\* \* \* \* \* \*

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; ..."

\* \* \* \* \* \*

This section of the DTPA was discussed by our Supreme Court in detail. Therein it was stated:

"Subdivision (7) prohibits representing that a good is of a particular standard, quality, grade, style, or model if it is of another. Quality is a measure of degree; as to particular goods quality may be calibrated by standard or grade, as with eggs or meat, or specified by style or model, as with machinery. Even when specific categories are not devised, the good may still be described with more general words of quality. Words like 'excellent' and 'perfect' are words indicating a high degree of quality."

\* \* \* \* \* \*

"Some overlap may occur as a result of broadly interpreting the listed violations in § 17.46(b). A broad interpretation is warranted, however, due to human inventiveness in engaging in deceptive or misleading conduct. The legislature did not intend its express purpose of protecting consumers from false trade practices to be circumvented by those who would seek out loopholes in the Act's provisions." *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex.Sup.1980).

Recently the Supreme Court further held that a builder's failure to construct a new home in accordance with his representations concerning compliance with Veterans' Administration standards and regulations was actionable under Section 17.46(b) of the DTPA. *Smith v. Baldwin*, 611 S.W.2d 611

(Tex.1980). We hold that the misrepresentations made in the Mechanic's Lien Contract were in violation of the DTPA. These points of error are also overruled.

We now turn to the alleged violations under the Credit Code. The contract in question which was signed by plaintiff is in substantially the same form as the one held to be in violation of the Credit Code, Chapter 6, in *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex.Civ.App. —San Antonio 1978, writ ref'd n. r. e.). In that case, Jim Walter Homes had retained a first lien on a home they constructed while at the same time charging an annual percentage rate of 11.4 percent. The San Antonio court held that the effect of 6.05(7) of the Credit Code is to limit first lien transactions to 10 percent interest or less. By this scheme, creditors are permitted to chose between higher rates and less security or lower rates and greater security in their contracts.

After the *Anguiano* decision, the legislature amended Art. 6.05(7) to read as follows:

"No retail installment contracts shall:

\* \* \* \* \* \*

(7) Provide for or grant a first lien upon real estate to secure such obligation, except . . . (b) such lien as is provided for or granted by a contract or series of contracts for the sale or construction and sale of a structure to be used as a residence so long as the time price differential does not exceed an annual percentage rate of 10 percent."

This same legislature, in 1977, also passed a statute sometimes referred to as the "cure statute." The pertinent portion of this statute involved in this case [Art. 8.01(c) of the Credit Code] provides as follows:

"(c)(1) A person has no liability to an obligor for a violation of this Subtitle or of Chapter 14 of this Title if within 60 days after having actually discovered such violation such person corrects such violation as to such obligor by performing the required duty or act or by refunding any amount in excess of that authorized by law; . . ."

The original contract signed by plaintiff was in violation of 6.05(7) of the Credit Code that was in effect at the time of this transaction. Jim Walter Homes, Inc., asserts that such violation was cured by a letter it sent to plaintiff on February 22, 1978. This letter stated that it would refund that portion of the payments previously paid and attributable to the time-price differential charged in excess of an annual percentage rate of 10% per annum, and that future payments would be decreased to reflect the reduction of the time-price differential as a percentage rate of 10%. On March 10, 1978, Jim Walter Homes sent to the plaintiff a check making a refund of that portion of previous payments made in excess of 10%. The Chapas cashed the refund check and began making payments at the reduced rate.

By sending the "cure" letter and refunding to the Chapas the amount necessary to bring the interest rate to 10 percent, the appellant Jim Walter Homes brought its contract into compliance with the law. This letter was unequivocal; it left no doubt that it was correcting the violation, and it was sent within 60 days after defendant discovered it was in violation of the statute.

The language following Art. 8.01 states that the provisions of this Act shall become effective at midnight on August 31, 1977, and shall apply to all transactions entered into prior to such date. We hold that Jim Walter Homes, Inc., had the option of curing his violation under the Credit Code and did so with its letter of February 22, 1978. This "cure letter" was sufficient to relieve defendant of liability under the Credit Code, even though it retained its first lien on the property. Defendant's point of error twenty-nine is sustained.

All of the other points of error raised by appellant have been considered and are without merit.

We accordingly affirm that part of the trial court's judgment concerning violations of the DTPA in favor of the plaintiff in the amount of $28,275.00. That part of the

judgment ($26,926.00) concerning violations of the Credit Code is reversed and judgment is here rendered that plaintiff take nothing. The costs of this appeal are assessed one-half to each party.

AFFIRMED IN PART and REVERSED AND RENDERED IN PART.