JIM WALTER HOMES, INC., et al.
(Mid-State Homes, Inc.),
Appellants,

v.

Jose B. VALENCIA, et ux. (Elodia G.
Valencia), Appellees.

No. 13–83–033–CV.

Court of Appeals of Texas,
Corpus Christi.

June 28, 1984.
Rehearing Denied Oct. 4, 1984.

Charles W. Hury, Atlas & Hall, McAllen, for appellants.

B. Mills Latham, Corpus Christi, for appellees.

Before NYE, C.J., and YOUNG and UTTER, JJ.

OPINION

NYE, Chief Justice.

This is an appeal by Jim Walter Homes, Inc., and Mid-State Homes, Inc., defendants-appellants, from a judgment in favor of Jose and Elodia Valencia, plaintiffs-appellees. Appellants were found to have violated the Texas Consumer Credit Code, TEX.REV.CIV.STAT.ANN. art. 5069–1.01 et seq. [hereinafter "Credit Code"] and the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41 et seq. [hereinafter "DTPA"] in the

sale, construction, financing and foreclosure of a new home to plaintiffs. The alleged violation(s) under the DTPA were tried to a jury, while the alleged violations under the Credit Code and defendants' counterclaim were tried before the Honorable Bert Tunks, sitting for the 148th District Court of Nueces County, Texas. Judgment was entered upon the DTPA violations in the amount of $49,728.00, and upon the Credit Code violations that defendants forfeit all amounts owing on the construction of the house in question.

The primary issues presented in this appeal are: (1) whether the trial court erred in awarding appellees recovery under the Credit Code; (2) whether the evidence is sufficient to support the jury's finding that appellees did not fail to give "notice" to appellants to support their recovery under the DTPA; (3) whether the trial court erred by refusing to allow appellants' counterclaim to be offset against appellees' actual damages; and (4) whether the trial court erred in computing appellees' total damages under section 17.50(b)(1) of the DTPA.

On June 2, 1981, appellees signed a contract wherein appellant (Jim Walter Homes) agreed to construct a new house on the appellees' unencumbered property in San Patricio County, Texas. The cash price of the house was $23,445.00; the finance charge was $21,789.00, for a total combined price of $45,234.00. To secure the payment of the debt, appellant required that appellees execute a Mechanic's Lien Contract with Power of Sale. The total amount was to be repaid in 180 monthly installments of $251.30 each. The Retail Installment Contract disclosed an annual percentage rate of 10% interest.

Under the terms of the contract, appellees, the Valencias, agreed to pay these monthly installments, the first installment to become due and payable on the fifth day of the month next following the thirtieth day after *"release"* of house to the Valencias, and one installment to become due and payable on the fifth day of each succeeding month until all the payments were made under the contract. The FINANCE

CHARGES were to accrue thirty days prior to due date of the first scheduled installment. The record shows that appellant (Jim Walter Homes, Inc.) received a building permit from the City of Gregory, Texas, on July 7, 1981. Construction on the house in question began in early July, 1981. Mr. John Radosta, the main branch manager of Jim Walter Homes, Inc., in Corpus Christi, testified that his files indicated that the date the house was "built" (a term used by appellants interchangeably with the contract word, "release") was August 28, 1981. According to appellant's internal records, the house was counted as "built" or "released" to the Valencias on August 28, 1981, following what appellants denominated a "final inspection" by appellant's own agents and/or employees. Once appellant (Mid-State Homes, the financial institution for Jim Walter Corporation) received notification from the local branch office of Jim Walter Homes, Inc., that the house was "built," a finance account was set up by Mid-State Homes requiring that the first payment (including time-price differential) be due on October 5, 1981.

The Valencias did not make any payments. The record shows that, after the third monthly payment accrued on Mid-State's books, appellant (Mid-State Homes) placed the Valencias' account with attorney Albert Schlieman for collection. The Valencias received a letter from Schlieman on behalf of Mid-State Homes, demanding payment of $971.90 (3 x $251.30 plus past-due insurance premiums in the amount of $218.00) for amounts allegedly past-due from October 5, 1981 to December 5, 1981. This letter stated that, if the amount specified ($971.90), plus the January 5 payment ($251.30), was not received within ten days of this demand letter, Mid-State Homes would accelerate maturity of the *entire Retail Installment Contract* and declare the total balance immediately due and payable. The Valencias still did not pay Mid-State Homes, whereupon Mid-State Homes accelerated the note and attempted to foreclose on the Valencias' property that was secured by Jim Walter Homes' Mechanic's Lien Contract. Notice of Trustee's Sale

was posted for sale on February 2, 1982. At that point, the Valencias employed an attorney to enjoin the appellants from proceeding with the foreclosure and sale of the Valencias' property. The Valencias' suit against Jim Walter Homes and Mid-State Homes was actually two distinct causes of action, i.e., a Credit Code violation under chapter 6 and a DTPA violation under section 17.46.

Jim Walter Homes and Mid-State Homes contend on appeal that there was an erroneous application of the Credit Code and that the trial court erred in awarding the Valencias recovery under the Credit Code because no excess time-price differential was charged.

## CREDIT CODE

It is clear that the contract made the subject of this cause was a Retail Installment Contract within the provisions of Chapter 6 of the Credit Code, TEX.REV. CIV.STAT.ANN. art. 5069–6.01, et seq. The Valencias contend, and we agree, that the appellants violated the Credit Code and that, as a result of that violation, the Code triggered the statutory penalty that requires forfeiture of all of the principal balance, interest or time-price differential, and all other charges. TEX.REV.CIV.STAT. ANN. art. 5069–8.02 (Vernon Pamphlet Supp.1984).

The trial court found that defendant's demands for payment and their acceleration of the note under the facts of the case constituted a charging of time-price differential in excess of twice the amount authorized by (Subtitle 2) the Texas Consumer Credit Code.

■ In order for us to determine whether appellants' actions constituted an unlawful charging of time-price differential in violation of the Credit Code, we look at all of the evidence in the record. Where, as here, no findings of fact or conclusions of law are requested or filed, it will be implied that the trial court made all the necessary findings that have support in the evidence and that will support its judgment. *In the Interest of W.E.R.*, 669 S.W.2d 716 (Tex.

1984); *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980).

The trial court found (based upon the jury's answers to special issues submitted) that the Valencias' house was not completed according to the contract of the parties, and, therefore, there was no obligation to begin payments on that contract. It follows that no time-price differential was due, and appellants' demands for payment and their acceleration of maturity amounted to an unauthorized "charge" within the purview of the Credit Code.

Appellants contend here that the contract of the parties specifically provides that the contractual note payments were to become due on the 5th day of the month "next following the thirtieth day after *release* of the house to buyer" (emphasis supplied by the appellants), and since appellant had "released" the house, the finance charge began to accrue thirty days before. Therefore, there was no violation of the Credit Code. Appellants argued that the contract only specifies "release" of the house and did not expressly require the total completion of the house as a condition precedent to maturity of appellees' obligation. Since the house was "released" to the Valencias by the appellants, they contend, in effect, that the contractual payments became due and owing. Since the Valencias did not pay in accordance with the retail installment contract, they lose the house and their property.

The evidence reflects that the house which was "built" or "released" to the Valencias suffered from numerous defects, including structural defects. The record shows that the house has never passed final inspection by the city building inspector, a prerequisite for occupancy by the Valencias. The record further shows that appellants forwarded a "Completion Slip" to the Valencias which stated that the house had been built according to the contract and the work had been completed to the customers' satisfaction. This statement was not signed by the Valencias. The jury found that Jim Walter Homes

failed to build the house in a good and workmanlike manner, as was represented to the Valencias. The jury determined that it would cost in excess of $12,000.00 (approximately ½ of the cost of the home) to bring the house to completion standards.

■ Absent an agreement to the contrary, an indebtedness does not become due under a construction contract or a contract for services until the builder substantially complies with the contract. *See Vance v. My Apartment Steak House of San Antonio, Inc.,* 677 S.W.2d 480 (Tex.1984); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160 (Tex.1982); *Moody v. Messer,* 489 S.W.2d 319 (Tex.Civ.App.—Corpus Christi 1972, no writ). In contracts of building and construction, the promise to build the structure in a good and workmanlike manner amounts to a condition precedent to recovery on the contract. *Baldwin v. Smith,* 586 S.W.2d 624 (Tex.Civ.App.—Tyler 1979), *rev'd on other grounds,* 611 S.W.2d 611 (Tex.1980).

■ In the present case, the evidence supports the trial court's implied findings that Jim Walter Homes had not substantially performed the conditions precedent that would permit appellants to recover on the contract. The Valencias' obligations to begin making payments, which included the finance charge, were not triggered by the appellants' unilateral "release" of the house. It follows that the allowable rate of time-price differential under the Credit Code was zero. No finance charge (time-price differential) was owed by the Valencias under the circumstances. Appellants' attempted collection efforts on a construction contract that was not completed constituted a charging of time-price differential which was in the aggregate in excess of double the total amount authorized by (subtitle 2) the Credit Code. TEX.REV.CIV. STAT.ANN. art. 5069–8.02. The charging of interest at any percentage rate for a period of time that is supposed to be free of interest is not only usurious, but is in excess of double the amount of interest allowed because any interest at all is more than double zero interest. *Houston Sash*

*& Door Company, Inc. v. Heaner,* 577 S.W.2d 217 (Tex.1979); *P.J.M. v. Walter Clark Advertising, Inc.,* 624 S.W.2d 282 (Tex.App.—Dallas 1981, writ ref'd n.r.e.); *Parr v. Tagco Industries,* 620 S.W.2d 200 (Tex.Civ.App.—Amarillo 1981, no writ). This same principle is applicable to a charging of time-price differentials. We hold that appellants' actions in demanding unearned time-price differentials constituted an unauthorized charge in violation of the Credit Code as found by the able trial judge. Violation of that statute invoked the penalties prescribed by art. 5069–8.01 and 8.02. *See Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324 (Tex.1984); *Rick Furniture Distributing Co. v. Kirlin,* 634 S.W.2d 738 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *Nationwide Financial Corp. v. English,* 604 S.W.2d 458 (Tex. Civ.App.—Tyler 1980, writ dism'd); *Moore v. Sabine National Bank of Port Arthur,* 527 S.W.2d 209 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). Appellants' point of error number one is overruled.

■ In their third point of error, appellants contend that the trial court erred by refusing to allow the entire amount of appellants' counterclaim for amounts due under the construction contract to be offset against appellees' actual damages under the DTPA, if any. Appellants' counterclaim was also tried to the court as factually undisputed. The trial court found that, *"but for"* the forfeiture provisions under the Credit Code as previously discussed, appellants would be entitled to recovery on their counterclaim for the cash price of the structure, $23,445.00. In view of our holding under appellants' first point of error, we find that the trial court did not err in denying appellants' recovery on their counterclaim. *See* TEX.REV.CIV.STAT.ANN. art. 5069–8.02. Point of error number three is overruled.

## DECEPTIVE TRADE PRACTICES ACT

In point of error number two, appellants contend that the trial court erred in awarding appellees recovery under the Texas Deceptive Trade Practices—Consumer Protec-

tion Act, Tex.Bus. & Com.Code Ann. § 17.-41 et seq. Appellants contend that there is no evidence, or, in the alternative, insufficient evidence to support the jury's finding that appellees did not fail to give appellants written notice before filing this suit.

In considering a "no evidence" or "insufficient evidence" point of error, we follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960). Section 17.50A of the DTPA (Vernon Supp.1984) provides:

(a) *As a prerequisite* to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, *a consumer shall give written notice to the person at least 30 days before filing the suit* advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. (Emphasis supplied.)

The Valencias admitted into evidence a copy of a letter dated January 26, 1982, from their attorney to both appellants, advising appellants that the house that was constructed for appellees was not built in a good and workmanlike manner, as represented by the appellants. The letter also states that such misrepresentations, along with other acts by appellants, constituted violations of the DTPA to which appellees had been actually damaged in the sum of at least $23,445.00, and appellees had incurred additional expenses of $1,750.00 in attorney's fees. Included with the letter was a copy of a certified mail receipt which showed a signature acknowledging receipt at appellants' home office in Tampa, Florida on January 29, 1982. This letter clearly complied with the written notice provisions of § 17.50A.

The Valencias also admitted into evidence a copy of a letter addressed to their attorney from appellant, Mid-State Homes. The letter is written on Mid-State Homes, Inc., letterhead and signed by Sam J. Salario, vice-president. This letter acknowledges receipt of the Valencias' letter dated January 26, 1982.

On appeal, appellants contend that both these exhibits were improperly admitted into evidence by the trial judge on the basis of improper authentication. At trial, appellants objected generally to the admission of the notice letter on the ground that the witness, John Radosta, Jim Walter Homes' local branch manager, did not testify that he had any knowledge of receipt of this document. A letter, properly addressed, stamped and mailed, gives rise to a rebuttable presumption that the letter was duly received by the addressee. *Mobile America Sales Corp. v. Gradley,* 612 S.W.2d 625 (Tex.Civ.App.—Beaumont 1980, no writ); *Mayad v. Rizk,* 554 S.W.2d 835 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The presumption is rebuttable, however, by actual evidence of nondelivery to the addressee. When so rebutted, the facts underlying the presumption remain for consideration by the trier of facts. *Cooper v. Hall,* 489 S.W.2d 409 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.); *see Colwell v. Blume,* 456 S.W.2d 174 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.).

In the instant case, it was undisputed that the letter was properly addressed to appellants' home office in Florida. The letter was sent by certified mail with return receipt requested. The receipt, (apparently) signed by appellants' authorized agent, was introduced into evidence. Jim Walter Homes' local manager, Radosta, testified that, although he did not recall seeing a copy of the Valencias' letter that was sent to appellants' office in Florida, he "most likely would have been mailed a copy of this letter from Tampa." Radosta identified Sam Salario as the Vice President for Mid-State Homes concerning the return correspondence letter that was received by

the Valencias' attorney from the appellants.

■ Appellants had the burden of establishing the negative fact, i.e., that appellees' written notice pursuant to § 17.50A was not received by them. This was not done. Appellants admitted that they requested and received Special Issue No. 15 inquiring as to the providing of such notice as an affirmative defense. The Valencias objected to this and other defense issues, on evidentiary grounds, arguing that there was no such defense under the DTPA. The trial court overruled the Valencias' objections. The jury then found against appellants on the notice issue. Appellants now contend here that the appellees cannot rely on this jury finding. This is also is without merit.

■ Appellants' final argument is that, even if appellees' notice letter was properly admitted into evidence, it does not meet the requirements of (§ 17.50A) the Code. Appellants argue that appellees' statement in the letter that the house was "not built in a good and workmanlike manner" was not specific enough as required by § 17.50A(a). This contention is equally without merit. Section 17.50A does not require a complaining consumer to threaten suit under the DTPA or specify which section he thinks is violated. The purpose of the section is to discourage litigation and encourage settlements of consumer complaints. *See Chrysler Corp. v. Roberson,* 619 S.W.2d 451, 461 (Tex.Civ.App.—Waco 1981, no writ). A misrepresentation of "good, substantial, workmanlike manner" of construction is a violation of the DTPA, § 17.46(b)(7). *See Jim Walter Homes, Inc. v. Chapa,* 614 S.W.2d 838 (Tex.Civ.App.— Corpus Christi 1981, writ ref'd n.r.e.). We hold that the letter in issue adequately identifies appellees' claims and the mini-

mum amount required to make them whole. *See Barnard v. Mecom,* 650 S.W.2d 123 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Point of error number two is overruled.

In their fourth point of error, appellants contend that the trial court erred in granting total damages in excess of three times actual damages, pursuant to TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1984). The statute in question allows a consumer who prevails to recover:

> (b) (1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000;

In the present case, the jury awarded appellees actual damages in the amount of $12,682.00. The jury also found that appellants "knowingly" made the misrepresentations in question (i.e. that the house would be constructed in a good, substantial, and workmanlike manner, when it was not), and that such misrepresentations were a producing cause of the damages. In addition, appellees requested a jury issue regarding the amount, if any, of discretionary damages they should recover. The jury awarded the sum of $38,046.00 in additional damages for the "knowing" violation. The trial court, based on the jury's findings as to damages, calculated appellees' total recovery under the DTPA as $49,728.00, this total amount included a $3,000.00 remittitur by the trial court in connection with the jury's excessive award of discretionary damages.[1]

---

1. (1) $12,682 (actual damages found by jury)
 + <u>2,000</u> (2 × actual damages not in excess of 1,000)
 $14,682

 (2) $12,682
 − <u>1,000</u>
 11,682
 × <u>3</u>
 $35,046 (jury found $38,046. Remittitur to $35,046.)

Appellants contend that the trial court's method of calculation in granting total damages against appellants allowed more than the statutory maximum specified in Section 17.50(b)(1). Specifically, appellants contend that the trial court's calculation of damages allowed an improper recovery of quadruple damages less $1,000.00. Appellants urge this Court to strictly construe the statutory language of § 17.50(b)(1), as amended in 1979, to allow total recovery of not more than three times appellees' actual damages. While this question may appear to be one of first impression, we think it is one that is best resolved in light of the plain meaning of the statute and the apparent legislative intent in amending § 17.-50(b)(1).

 Under the original wording of Section 17.50(b)(1) of the DTPA, the trebling of any actual damages was mandatory. *Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex.1977). The 1979 legislative amendments to § 17.50 provides three types of damages that may be awarded. First, the trier of fact may award actual damages. Second, if actual damages are so found, it is *mandatory* that the court award additional statutory damages in the amount specified (i.e. two times that portion of actual damages that does not exceed $1,000). Third, if the trier of facts finds that the defendant's conduct was committed knowingly, *the trier of fact may award discretionary damages* (emphasis ours) up to a specified amount, or alternatively, not award them at all. *Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446 (Tex. 1984).

It is important to note that the legislature expressly made any award of this third type of damages within the discretion of the trier of fact. However, the 1979 amendment requires the consumer to establish that the defendant's conduct was committed "knowingly" before he may recover treble damages in addition to his actual damages. The apparent evil the legislature was attempting to cure was the automatic trebling of damages against a non-culpable defendant. It is only logical, then, to allow a jury to award greater damages against a defendant who knowingly wrongs a consumer than what was previously mandated against a defendant who inadvertently or unintentionally harmed a consumer.

In the instant case, the trial judge correctly calculated appellees' recovery pursuant to the statutory language of § 17.-50(b)(1). The trial court, based upon the jury's findings, first found that appellees were entitled to recover $12,682 in actual damages. Next, the trial court awarded appellees an additional $2,000.00 as required by the first sentence of § 17.-50(b)(1). Finally, the trial court found that appellees may recover three times the amount of their actual damages in excess of $1,000; i.e. $35,046, for a total recovery of $49,728.00. Under the amended Section 17.50(b)(1), a recovery of more than treble damages is possible. *See* Curry, *The 1979 Amendments to the Deceptive Trade Practices-Consumer Protection Act,* 32 Baylor L.Rev. 51, 61–62 (1980); Maxwell, *The 1979 Amendments to the Deceptive Trade Practices-Consumer Protection Act,* State Bar of Texas, Texas Consumer Law for General Practitioners (1979).

We recognize that this method of calculation yields a total of damages, actual and punitive, of $1,000.00 less than a quadrupling of appellees' actual damages; i.e. 4 × 12,682.00 = 50,728.00 - 1,000.00 = 49,728.-00. However, we reject appellants' argument that this quadruple damages theory allows appellees a double recovery of the first $1,000. Appellants contend that the first $1,000.00 is doubled and then added to

(3) $35,046
+ <u>14,682</u>
 $49,728

the actual damages which is then added to three times the actual damages. The key is that the amount automatically doubled by the court is not considered when determining the maximum discretionary damages.

We hold that, based on the language of the statute, as well as the legislative intent, the trial court did not err in calculating appellees' DTPA recovery. We pause to note that the Act itself provides that it shall be liberally construed and applied to promote its underlying purposes, which are: to protect consumers against false, misleading, and deceptive business practices.... TEX.BUS. & COM.CODE ANN. § 17.44 (Vernon 1984). Appellants' point of error number four is overruled.

In their fifth point of error, appellants contend that the trial court erred in refusing to allow appellants to present evidence of diminution in fair market value of the structure made the basis of this cause. We have previously held that the usual consideration in deciding which measure of damages to use is the economic feasibility of correcting the defects or bringing the house in compliance with the contract. *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 635 (Tex.Civ.App.—Corpus Christi 1981, no writ). Where the correction of defects and deviations would impair the entire structure or require the expenditure of sums in excess of the value of the structure, the correct measure of damages is the difference in the value of the structure as constructed and its value had it been constructed without defects or deviations. *Hutson v. Chambless*, 157 Tex 193, 300 S.W.2d 943 (1957); *Jim Walter Homes v. Mora*, 622 S.W.2d 878, 883 (Tex. App.—Corpus Christi 1981, no writ). Where the correction of defects and deviations would not impair the structure as a whole, the remedial cost is an appropriate measure of damages. *Salais v. Martinez*, 603 S.W.2d 296 (Tex.Civ.App.—El Paso 1980, no writ); *Greene v. Bearden Enterprises, Inc.*, 598 S.W.2d 649 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Rogowicz v. Taylor and Gray, Inc.*, 498 S.W.2d 352 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

Appellants contend that, once appellees elected to choose the remedial measure of damages, appellants should have been given the opportunity to present evidence of diminution in market value. Appellants prepared their Bill of Exception on that evidence. At the close of the Bill of Exception, appellants tendered only an exhibit representing a list of uncompleted items and repairs on the subject house totaling $1,929.00.

We hold that the cost of repairs was the proper measure of recovery for the DTPA violation. The record reflects that the correction of the defects would not result in unreasonable economic waste, and that these corrections were feasible without necessarily incurring unreasonable expense. We note that in their first amended original answer, appellants affirmatively pleaded, in the alternative, that appellees' recovery be limited to "the reasonable cost to cure." Appellants counterclaimed for the contractual amounts owed on a claim of substantial performance on the terms of the contract. *See Vance v. My Apartment Steak House of San Antonio*, 677 S.W.2d 480; *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 164 (Tex. 1982). Additionally, appellants have failed to show that the exclusion of the evidence was harmful error. TEX.R.CIV.P. 434. Appellants' fifth point of error is overruled.

In point of error number six, appellants contend that the trial court erred in allowing appellees' recovery for multiple damages because there was no evidence, or insufficient evidence to support the jury's finding that appellants "knowingly" committed the misrepresentations. Appellants argue that the alleged misrepresentations were only made to appellees at the time they entered the contract; and, for the appellants to have committed such an act "knowingly," it would have to be shown that they never intended to build the house in compliance with the contract at the outset. This contention is without merit.

The jury found that appellants "knowingly" engaged in the conduct in question; i.e. that the house would be constructed in a good, substantial, and workmanlike manner, when it was of another. It is clear that misrepresentations of this type are sufficient to be a violation of the DTPA, Section 17.46(b)(7). *Jim Walter Homes, Inc. v. Mora,* 622 S.W.2d at 882; *Jim Walter Homes, Inc. v. Chapa,* 614 S.W.2d at 841–42. This section does not require proof of intent or knowledge before the sanctions of the DTPA are imposed. *See Smith v. Baldwin,* 611 S.W.2d 611, 616–17 (Tex.1980).

In the present case, the jury was instructed that the term "knowingly" means "actual awareness of the falsity, deception or unfairness of the act or practice giving rise to plaintiffs' claim, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." TEX. BUS. & COM.CODE ANN. § 17.45(9) (Vernon Supp.1984). The record reflects that the act or practice which gave rise to appellees' damages was the act of building the house defectively, after a representation that the house would be built in a good, workmanlike manner. After careful review of this record, we find that the evidence is sufficient to support appellees' recovery of multiple damages against appellants. Point of error number six is overruled.

In their final point of error, appellants contend that appellees committed reversible error by suggesting to the jury that, because appellants are a corporation, they should be treated differently than a natural person in reaching their verdict. In appellees' closing argument, counsel argued that a corporation "thinks money, it exists for money, it talks money, it listens in money, it does everything in terms of money, and the punishment for a corporation, you're going to have to talk in a corporate language." Appellants objected to this type of argument as improper, inflammatory, and in violation of the Motion in Limine. The trial court overruled this objection, and no instruction to disregard such statements was requested or given.

 While this argument does not meet with our approval, we hold such argument did not constitute reversible error. *Standard Fire Insurance Co. v. Reese,* 584 S.W.2d 835 (Tex.1979); *Gulf States Utilities Co. v. Reed,* 659 S.W.2d 849 (Tex.App. —Houston [14th Dist.] 1983, writ ref'd n.r. e.). Appellants have failed to sustain their burden of showing the argument was harmful error. TEX.R.CIV.P. 434. Point of error number seven is overruled.

The judgment of the trial court is AFFIRMED.