Anna BLACK, Appellant,

v.

**TEXAS DEPARTMENT OF LABOR AND STANDARDS and Texas Secretary of State, Appellees.**

No. 6–90–060–CV.

Court of Appeals of Texas, Texarkana.

Aug. 20, 1991.

Rehearing Overruled Sept. 17, 1991.

William F. Turman, Austin, for appellant.

H. Clyde Farrell, Asst. Atty. Gen., Tom Cockburn, Austin, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Anna Black appeals from an adverse judgment in a nonjury trial involving a letter of credit issued pursuant to TEX.REV. CIV.STAT.ANN. art. 5221*l*, § 1 et seq. (Vernon 1987 & Supp.1991), the Health Spa Act.

The Health Spa Act requires that each health spa operating in Texas, for the protection of its members, must file a surety document in the amount of $20,000.00 with the Texas Department of Labor and Standards.[1] The surety document may be a letter of credit, payable to the State, issued by a properly insured financial institution. Financial losses chargeable against the security are limited to any unused or unearned portion of a health spa member's dues or fees.

The letter of credit involved here was issued by the American Savings Bank. It was supported by a $20,000.00 cash deposit by Anna Black. Its purpose was to protect members of the Dynafit Health Spa from

---

1. The Secretary of State is now the filing officer. The 1989 Legislature amended the Health Spa Act to transfer to the Secretary of State the responsibility for administering the Act, effective September 1, 1989. *See* ch. 1039, § 3.15, 1989 TEX.GEN.LAWS 4219.

loss of their membership fees if the spa ceased operation. Until January 7, 1988, Dynafit had operated under contract a health spa known as the Supreme Court Racquet Club. On that date, Dynafit assumed operation of the Racquet Club spa under its own name, and the members of the former spa became members of Dynafit without payment of additional fees. Dynafit also enrolled additional members after January 7, 1988.

On December 8, 1988, the Department of Labor and Standards' general counsel sent a letter to the American Federal Savings Bank advising that the Dynafit Corporation had ceased operation and that there were 130 claims against Dynafit for unearned fees or dues totaling more than $25,000.00. The Department's letter further stated that according to the terms of the Bank's letter of credit, it was then payable to the state in its total amount because the claims exceeded $20,000.00.

When Anna Black learned of the demand, she advised the Bank that she would contest payment under the letter. As a result, the Bank refused to pay.

The Department filed suit against the Bank to collect the amount demanded. Black, who had posted $20,000.00 cash collateral with the Bank to support the letter of credit, intervened in the suit. She contended that the Department had failed to make a proper demand for payment on the letter of credit, that only members who had joined Dynafit after the Supreme Court Racquet Club closed operations were covered, and that the claims must be reduced to judgment before there can be a recovery on the letter.

In a trial to the court, judgment was rendered against the Bank for the $20,-000.00 represented by the letter of credit, together with attorney's fees. Black was denied relief, and only she has appealed.

On appeal, Black reurges her contentions in the trial court and also asserts error because the trial court allowed the Department to introduce a list of persons who had filed claims against Dynafit when the list had not been timely identified in response to interrogatories. We overrule all these contentions and affirm the judgment.

Black served interrogatories on the Department. Number 5 asked for designation and copies of all documents which the Department intended to use as evidence. The Department answered the interrogatory by listing only the letter of credit in question, Dynafit's application for registration to operate the health spa, and a copy of a letter from the Department's general counsel demanding payment on the letter of credit. Eight days before trial, the Department filed a motion for leave to supplement its answers to include a list of the individual claims that had been filed against the letter of credit and on which the total claim of more than $25,000.00 was based.

When trial began, the court heard argument on whether good cause existed to allow the Department to introduce the list described in its motion to supplement. After argument, the court admitted the supplemental answers, thus impliedly finding there was good cause for their admission. *Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873, 877 (Tex.App.—Corpus Christi 1988, writ denied).

Black's first contention on appeal is that the court erred in admitting the list into evidence because the Department had not timely supplemented its answers. TEX. R.CIV.P. 166b(6) requires that supplemental answers be filed not less than thirty days before trial unless the court finds good cause for permitting later supplementation. Black argues that the list of claims contained in the supplemental answer should not have been admitted in evidence, and that without those claims the Department's case failed.

To support good cause, the Department argued that it did not supplement its answers earlier because, before the suit was even filed, it had provided Black a list of the various claims which then existed; that it believed the list of claims would be agreed or stipulated at trial; that when it learned from Dynafit's counsel eight days before trial that Dynafit intended to contest the Department's use of the evidence, it immediately prepared and furnished Dy-

nafit with the supplemented answer and moved the court for leave to supplement; that the summary of the claims was not provided earlier because it was prepared only eight days before trial, when the Department learned Black intended to contest the claims; and that the summary list was offered solely to show the total amount of claims filed against Dynafit.

At the conclusion of the hearing, the court admitted the evidence as Plaintiff's Exhibit 2. Exhibit 2 was the list of complainants against Dynafit which had been a part of the supplemental answer to the interrogatories.[2] The court also admitted Exhibit 3, a letter from Black's counsel, William Turman, to the Department's counsel, written on January 4, 1988, more than a year before the Department filed suit. In that letter, Turman used the phrase "Pursuant to your production of the list of claimants. . . ." That statement supports the Department's claim that Black had a list of claimants long before trial, lacking only the summary and update which was provided in the supplemental answer eight days before trial.

As support for her contention that the Department's good cause evidence was insufficient, Black cites the case of *Sharp v. Broadway National Bank*, 784 S.W.2d 669 (Tex.1990). In that case, the trial court allowed an attorney to testify as an expert witness on attorney's fees, even though he had not been designated as an expert witness in answers or supplemental answers to interrogatories, on the basis that the opposing party had deposed the attorney and knew of his intended use as an expert. The Supreme Court held that, assuming the explanations were true, they were insufficient to establish good cause for admission of testimony of a witness not properly identified in discovery. The court noted that the absence of surprise, unfairness, or ambush does not alone satisfy the good cause exception to the sanction of automatic exclusion. *Sharp v. Broadway National Bank, supra.*

The Department distinguishes *Sharp* from this case because Black already had the information she requested, even before she asked for it in the interrogatory, and because *Sharp* involved an undesignated *witness.* We believe these are valid distinctions. Failure to timely identify or furnish documents which the requesting party already possesses does not seem to constitute the kind of "trial by ambush" contemplated by the Supreme Court in *Gutierrez v. Dallas Independent School District,* 729 S.W.2d 691, 693 (Tex.1987). Moreover, timely identification of *witnesses* is critical because it creates the need for additional time to do further discovery, such as depositions, background investigations, and such. *See* W. Kilgarlin, *Sanctions for Discovery Abuse: Is the Cure Worse Than the Disease?* 54 Tex.B.J. 658, 665 (1991). Documents ordinarily do not require such additional time or investigation.

The record supports the trial court's implicit finding of good cause and does not reveal an abuse of the trial court's discretion. Additionally, we find that the failure of the Department to supplement its answer with the list until eight days before trial was harmless in this case. *See* Tex. R.Civ.P. 166b(6), 215(5).

■ Black also points out that the Department did not supplement its answer to Interrogatory 5 to include proof that the demand letter was received by the Bank. Over Black's objection, the court admitted copies of a mail tag and receipt showing that the letter was mailed and heard testimony that the Bank had in fact received the letter. A copy of a certified mail tag and return receipt for the letter was attached to the Department's original and amended pleadings. The Department thus argues that there was no need to provide in an answer or supplemental answer information which had already been provided to Black. We agree that this omission was harmless in any event. The purpose of responding to interrogatories is to provide parties with complete information so that the case may proceed on the merits with discoverable facts known to all parties. That purpose was accomplished here.

---

**2.** The document did not include the claims themselves, only a summary listing of them.

Additionally, the receipt of the demand letter was proved by other evidence. Mary Baylie, a program manager for the Department, testified that she was familiar with the Department's usual office procedures and that the presence of the photostatic copy of the letter in question in the Department's files meant that the original letter was placed in a properly addressed and postmarked envelope bearing the proper return address. The mailing of the letter was thus shown, and a presumption that the letter was received by the addressee Bank arises. *See Jim Walter Homes, Inc. v. Valencia,* 679 S.W.2d 29, 35 (Tex.App.— Corpus Christi 1984), *modified on other grounds,* 690 S.W.2d 239 (Tex.1985); *see also First Equitable Title v. Products Diversified,* 678 S.W.2d 524, 526 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.). Moreover, the Bank's counsel admitted in open court to the trial judge that he had the original of the demand letter.

■ Next, Black contends that the trial court erred in ruling that the Department made a proper demand for payment under the letter of credit. She argues that the demand letter did not constitute a draft as required by the letter of credit. The letter of credit reads as follows:

We hereby establish our irrevocable Letter of Credit in favor of the State of Texas for the account of DynaFit Corporation located at 1020 Walsh Tarelton, Austin, Travis County, Texas 78746. This Letter of Credit is effective up to the aggregate amount of TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00).

This Letter of Credit shall remain in effect until the account of DynaFit Corporation is released or discharged by the TEXAS DEPARTMENT OF LABOR AND STANDARDS or until the expiration date of February 24, 1989. This is your authority to draw drafts for any amount, or the full amount not to exceed TWENTY THOUSAND AND NO/100 DOLLARS ($20,000.00). This Letter of Credit is given as security for the benefit of any members of the health spa who suffer financial losses due to the insol-

vency or cessation of operation of the health spa. "Financial losses" shall mean and be limited to any unused or unearned portion of such member's due's (sic) or fees. Such a member may bring an action based on the Letter of Credit and recover against the Letter of Credit, but the liability of the bank may not exceed the aggregate amount of this Letter of Credit. If the claims filed against the Letter of Credit exceed the amount of the Letter of Credit, the bank shall pay the amount of the Letter of Credit to the Department for distribution to the claimants on a pro rata basis. The bank is relieved of liability under the Letter of Credit on payment of the amount to the department. The DEPARTMENT OF LABOR AND STANDARDS, acting for the State of Texas may draw upon this Letter prior to its expiration if, in it's (sic) opinion, unearned dues or fees have not been refunded, whether disputed or not, might exist, but any such funds will be held in a suspense account subject to final determination of liability under due process of law.

All drafts are to be marked "Drawn under Letter of Credit No. 026, and presented at our counter at 3101 Bee Cave Road, Austin, Texas by the close of business day on February 24, 1989.

A demand letter may constitute a draft for purposes of a letter of credit. *See Temple–Eastex, Inc. v. Addison Bank,* 672 S.W.2d 793 (Tex.1984); *Travis Bank & Trust v. State,* 660 S.W.2d 851 (Tex.App.— Austin 1983, no writ). Here, the demand letter referenced Letter of Credit No. 026, issued by the Bank; stated that the credit was payable in its total amount; quoted the payment clause from the letter of credit; informed the bank that Dynafit had closed its operation on May 31, 1988, resulting in 130 claims aggregating more than $25,-000.00; and made demand under the letter of credit for prompt and full payment of $20,000.00. We conclude that the demand letter in this instance sufficed as a draft.

■ The letter of credit requires that all drafts on the letter of credit must be "presented at our counter at 3101 Bee Cave

Road, Austin, Texas...." Although the demand here was mailed instead of delivered personally, we conclude that it complied with the letter of credit's terms. There is no question that the demand letter, which sufficed as a draft, was received by the Bank prior to the expiration date of the letter of credit. In this noncommercial area, absolute, perfect compliance with the letter's terms was not required. *See Temple–Eastex, Inc. v. Addison Bank, supra; New Braunfels National Bank v. Odiorne,* 780 S.W.2d 313 (Tex.App.—Austin 1989, writ denied).

■ Black also challenges the trial court's failure to find that the Bank's letter of credit was modified by a letter from Dynafit's attorney. She also contends that the court should have limited liability on the letter of credit to members of Dynafit who joined after January 7, 1988. This contention is based on the letter written by Peter Kreisner, attorney for Dynafit Corporation, to Mary Baylie, an employee of the Department, forwarding the letter of credit. In the letter Kreisner stated:

I understand that these letters of credit serve as security in the event that financial losses are suffered by members of Dynafit Corporation since January 7, 1988, which is the first date that Dynafit Corporation enrolled members in its own name for its own benefit. If you believe that this security applies to any other entity, for the benefit of any other members, or for any other time period, do not file the letters of credit, but rather contact me immediately.

Kreisner testified that he intended the letter of credit to be limited to those losses suffered after January 7, 1988, which was the date Dynafit commenced operation of the former Supreme Court Racquet Club, and to be security only for money *paid to Dynafit after that date* by its members. In other words, his purpose was to protect the letter of credit from claims by former Supreme Court Racquet Club members who had paid their membership fees to that club and to limit liability to those persons who became members of Dynafit after January 7, 1988. Kreisner admitted, however,

that he wrote the letter for Dynafit and that he was not representing the Bank.

The language of the Health Spa Act provides in relevant part:

The bond or other security deposit shall be payable in favor of the state and shall be held for the benefit of *any members of the health spa* who suffer financial losses due to the insolvency or cessation of operation of the health spa. *"Financial losses" shall mean* and be limited to any unused or unearned portion of *such member's* dues or fees. Such a member may bring an action based on the bond and recover against the surety regardless of the number of claimants or claims filed against the bond, but the liability of the surety may not exceed the aggregate amount of the bond. *If the claims filed against the bond exceed the amount of the bond, the surety shall pay the amount of the bond to the secretary of state for distribution to the claimants on a pro rata basis.*

TEX.REV.CIV.STAT.ANN. art. 5221*l*, § 10 (emphasis added). The language of the letter of credit substantially tracks the statutory language. That language does not limit payment to persons who became members by virtue of having made payments to the particular entity that obtained the letter of credit. Rather, the protected persons are *"any members* of the health spa who suffer financial losses due to the insolvency or cessation of operation of the health spa." Members of the former spa who became members of Dynafit were therefore members within the meaning of the statute.

The trial court's implied finding that the letter of credit was not modified is supported by the evidence. Trial was to the court, and therefore all facts are deemed found in support of the judgment. *Duncan v. Willis,* 157 Tex. 316, 302 S.W.2d 627 (1957). Because the letter was not sent by the Bank, it could not alter the Bank's obligation under the letter. By virtue of TEX.BUS. & COM.CODE ANN. § 5.104(a) (Vernon 1968), a modification of the terms of a credit or confirmation must be signed by the issuer or confirming bank. Moreover, a necessarily implied finding in support of

**502**

the judgment is that there was no agreement by the parties that the letter of credit would be modified so as to deny protection to persons who became members of Dynafit by virtue of their previous membership in the Supreme Court Racquet Club, without further payment to Dynafit. We conclude that such implied finding is not so against the overwhelming weight of the evidence as to be clearly and manifestly wrong. *See Texas State Bank of Austin v. Sharp*, 506 S.W.2d 761 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.).

In her final point of error, Black contends that the trial court erred in holding that the letter of credit was payable without prior adjudication of claims. She argues that to collect on the letter of credit under the terms of TEX.REV.CIV.STAT.ANN. art. 5221*l* each member must bring a lawsuit to establish his claim. We disagree. Article 5221*l*, § 10(a) provides that a member may bring an action against the surety, but if the claims filed against the bond exceed the amount of the bond, the surety shall pay the amount of the bond to the Department for distribution to the claimants on a pro rata basis. In this case, the claims exceeded the amount of the bond by several thousand dollars.

The Texas Government Code provides that in construing a statute, a court may consider the object sought to be obtained and the administrative construction of the statute. TEX.GOV'T CODE ANN. § 311.023(1), (6) (Vernon 1988). The Department of Labor and Standards adopted rules under the Health Spa Act which provided for hearings to determine the validity of claims against a health spa's security instrument. These rules were superseded by a similar regulation promulgated by the Texas Secretary of State, when that office acquired responsibility for administering the Health Spa Act. *See* 1 TEX.ADMIN.CODE § 102.41 (West Oct. 1, 1990). We conclude that Black's claim that the members must reduce their claims to judgment before there can be liability on a letter of credit is without merit under the facts of this case.

The judgment of the trial court is affirmed.

